Ray A. Ybarra Maldonado
Ariz. Bar # 027076
LAW OFFICE OF RAY A. YBARRA MALDONADO, PLC
2701 East Thomas Road, Suite A
Phoenix, Arizona 85016
Telephone: (602) 910-4040
Facsimile: (602) 910-4444
ray@abogadoray.com

Mark Fleming*
NY Bar # 4487534
NATIONAL IMMIGRANT JUSTICE CENTER
208 South LaSalle Street, Suite 1300
Chicago, Illinois 60604
Telephone: (312) 660-1628
Facsimile: (312) 660-1505
mfleming@heartlandalliance.org

Matthew J. Piers*
José J. Behar*
Chirag G. Badlani*
HUGHES SOCOL PIERS RESNICK & DYM LTD.
70 West Madison Street, Suite 4000
Chicago, IL 60657
Telephone:  (312) 580-0100
Facsimile: (312) 604-2777
mpiers@hsplegal.com
jbehar@hsplegal.com
cbadlani@hsplegal.com

R. Andrew Free*
LAW OFFICES OF R. ANDREW FREE
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959
andrew@immigrantcivilrights.com

*Attorneys for Plaintiff*
*pro hac vice* application forthcoming

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jacinta Gonzalez Goodman,<br><br>*Plaintiff*,<br><br>v.<br><br>Joseph M. Arpaio,<br>in his official capacity as Sheriff of<br>Maricopa County, Arizona; and<br>Maricopa County, Arizona<br><br>*Defendants*. | Case No. _____<br><br>**Complaint**<br><br>**Jury Trial Demanded** |

1    **COMPLAINT**

2    Plaintiff Jacinta Gonzalez Goodman ("Plaintiff" or "Ms. Gonzalez"), by and

3    through her undersigned counsel, hereby complains as follows against Defendants

4    Sheriff Joseph M. Arpaio, and Maricopa County, Arizona.

5    **STATEMENT OF THE CASE**

6    1.    Plaintiff brings this action under 42 U.S.C. § 1983 and the Arizona

7    Tort Claims Act, ARIZ. REV. STAT. § 12-820, *et seq.*, complaining of her false arrest

8    and detention by Defendants pursuant to their policy, custom and practice of

9    subjecting individuals to arrest and detention without probable cause, notice or

2

1    opportunity to be heard, in violation of the Fourth and Fourteenth Amendments to

2    the United States Constitution, federal immigration law, and Arizona state tort law.

3        2.    Plaintiff Jacinta Gonzalez Goodman ("Ms. Gonzalez") is a natural born

4    United States citizen, who was born in Mexico to Mexican citizen father and a

5    United States Citizen mother.

6        3.    Nevertheless, on March 19, 2016, officers of the Maricopa County

7    Sheriff's Office unlawfully arrested Ms. Gonzalez and detained her overnight in

8    solitary confinement without probable cause and based solely on an immigration

9    detainer request from Immigration and Customs Enforcement ("ICE").

10       4.    ICE utilizes immigration detainer requests to seek the arrest and

11   detention of individuals for possible civil immigration violations.

12       5.    As was well-known to the Defendants, ICE's detainer requests are not

13   supported by probable cause; not supported by a warrant or any other probable

14   cause determination by a detached, neutral judicial officer; and are not in

15   accordance with the limited warrantless arrest authority for alleged civil

16   immigration violations.

17       6.    Compliance with ICE's immigration detainers is voluntary.  Local law

18   enforcement agencies are not required to comply with ICE immigration detainers.

19       7.    Maricopa County Sheriff's officers arrested and detained Ms.

20   Gonzalez pursuant to a longstanding policy, custom, and practice of Defendants

1  Sheriff Arpaio and Maricopa County to unlawfully arrest and detain individuals

2  based solely on these facially invalid and voluntary ICE detainers.

3      8.    Pursuant to the policies, practices and customs of Defendants Sheriff

4  Arpaio and Maricopa County, Ms. Gonzalez was not served with a copy of the ICE

5  immigration detainer or otherwise afforded an opportunity to be heard as to why

6  her arrest was unlawful.

7      9.    By causing the arrest and detention of Ms. Gonzalez pursuant to the

8  above-stated custom, policy and practice, Defendants acted with deliberate

9  indifference to and in violation of her rights under the Fourth and Fourteenth

10  Amendments to the United States Constitution, as well federal immigration law.

11  Defendants, likewise, subjected her to false arrest and imprisonment in violation of

12  Arizona law.

13                **JURISDICTION, NOTICE AND VENUE**

14      10.    This Court has subject matter jurisdiction over Ms. Gonzalez's claims

15  under the Fourth and Fourteenth Amendments to the United States Constitution, 28

16  U.S.C. § 1331 (federal question) and § 1343 (civil rights).   This Court has

17  supplemental jurisdiction over Ms. Gonzalez's state tort claims under 28 U.S.C. §

18  1367(a) (supplemental jurisdiction).

19      11.    Ms. Gonzalez filed her Notice of Claim, in accordance ARIZ. REV.

20  STAT. §12-821.01(A), which was received on August 25, 2016.  The statutory sixty

4

1   days for Defendant's response expired on October 24, 2016. ARIZ. REV. STAT. §12-

2   821.01(E).

3       12.   Venue is proper in this judicial district pursuant to 28 U.S.C. §§

4   1391(b)(1), (b)(2), because all Defendant resides in the district and a substantial

5   part of the events giving rise to Ms. Gonzalez's claims occurred in this judicial

6   district.

7                             **THE PARTIES**

8       13.   Plaintiff Jacinta Gonzalez Goodman resides in Phoenix, Arizona

9   (Maricopa County).  Ms. Gonzalez has been a U.S. citizen since birth and at all

10   times pertinent hereto has had a valid, unexpired U.S. passport.

11       14.   Defendant Joseph M. Arpaio is the Sheriff of Maricopa County,

12   Arizona. Defendant Arpaio is the head of the Maricopa County Sheriff's Office

13   ("MCSO") and is responsible for formulating, approving, implementing, and/or

14   enforcing the Maricopa County policy, custom, and practice of arresting and

15   detaining individuals based on voluntary immigration detainers.  Defendant Arpaio

16   is sued in his official capacity.

17       15.   Defendant Maricopa County is a political subdivision of the State of

18   Arizona that can be sued in its own name.  Defendant Maricopa County includes,

19   oversees, and is responsible for the Maricopa County Sheriff's Office and its

20   county jail system.

1    ## FACTUAL AND LEGAL ALLEGATIONS

2    ### Defendants' History of Unconstitutional Policies and Practices of Arresting
3    ### Individuals for Alleged Civil Immigration Violations

4    16.    Defendants have a long history of aggressively – and illegally -

5    collaborating with ICE to arrest individuals for alleged civil immigration

6    violations.    In February 2007, the MCSO entered into a memorandum of

7    agreement with ICE, under 8 U.S.C. § 1357(g), INA § 287(g) (a.k.a. "287(g)

8    agreement")), that permitted MCSO officers to conduct prescribed civil

9    immigration enforcement, including issuing and executing immigration detainers.

10   *See* Ex A.

11   17.    Pursuant to the 287(g) agreement, MCSO conducted its civil

12   immigration enforcement under direct ICE supervision. *See Id.*

13   18.    In June 2008, the United States Department of Justice (DOJ) opened an

14   expansive civil rights investigation into whether MCSO had a pattern and practice

15   of racial-profiling Latinos and otherwise violating the constitutional rights of

16   Latinos in its enforcement practices.  Ex. B.

17   19.    On December 15, 2011, DOJ issued a scathing report that found

18   rampant, systemic racial-profiling and constitutional violations committed by the

19   MCSO against Latinos in the county. *Id.*

20   20.    That same day, the Secretary for the Department of Homeland Security

21   (DHS) was forced to terminate ICE's 287(g) agreement with MCSO.  *See* Ex. C.

6

1  21.   Despite the DOJ civil rights findings, and pursuant to the policy,

2  practice and custom of the Defendants, MCSO and ICE have continued to

3  aggressively collaborate in civil immigration arrests through immigration

4  detainers. *See, e.g.,* Transactional Record Access Clearinghouse (TRAC), "ICE

5  Detainers Issued for Facilities by Level of Most Serious Conviction," (Feb. 11,

6  2014), *available at http://trac.syr.edu/immigration/reports/343/include/table3.html*

7  (last visited Nov. 3, 2016) (ICE FOIA data showing in FY2012 & most of FY2013

8  that more than 11,000 detainers issued to MCSO jails, more than 85% of which

9  against individuals with no criminal convictions or very minor offenses).

10  **Immigration Detainers Fail to Conform with Basic Constitutional Protections**
11  **and Violate the Limited Warrantless Arrest Authority**
12  **For Civil Immigration Violations**

13  22.   An immigration detainer is a boilerplate, checkbox form issued by any

14  rank and file immigration officer for a civil immigration purpose. Ex. D; *see* 8

15  C.F.R. § 287.7(b) (authorizing all "deportation officers" and "immigration

16  enforcement agents," among others, to issue detainers); 8 C.F.R. § 287.7(a)

17  (describing the purpose of an immigration detainer).

18  23.   A detainer is a request that the law enforcement agency (LEA) arrest

19  and detain the individual for up to an additional 48 hours beyond when the LEA's

1    legal detention authority expires, in order to allow ICE to assume custody if it

2    determines to do so. *See* Ex. D.[1]

3         24.   A detainer is not supported by warrant or any other probable cause

4    determination, by a detached and neutral judicial officer or otherwise. *See* Ex. D.

5         25.   ICE detainers are not supported by sworn, particularized showings of

6    probable cause that the subject is a noncitizen and removable.  *See id.*

7         26.    The detainer form, instead, contains boxes to check and select from a

8    wide-ranging list of generic potential sources of information that may or may not

9    form the basis of a finding of probable cause to make an arrest, including:

10        • the pendency of ongoing removal proceedings against the subject;

11        • biometric confirmation of the subject's identity and a records check
12          of federal databases that affirmatively indicate, by themselves or in
13          addition to other reliable information, that the subject either lacks
14          immigration status or notwithstanding such status is removable
15          under U.S. immigration law; and/or

16        • statements made voluntarily by the subject to an immigration officer
17          and/or other reliable evidence that affirmatively indicate the subject

---

[1] Immigration detainers have been consistently held to be voluntary requests to state and local law enforcement agencies. *Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014) (holding detainers voluntary and stating "Since at least 1994, and perhaps as early as 1988, ICE (and its precursor INS) have consistently construed detainers as requests rather than mandatory orders."); Letter from Daniel Ragsdale, Acting Director of ICE, to U.S. House of Representatives (Feb. 25, 2014) (Ex. E). U.S. district courts have followed suit. *Morales v. Chadbourne*, 996 F. Supp. 2d 19, 40 (D.R.I. 2014), *aff'd* 793 F.3d 208 (1st Cir. 2015); *Miranda-Olivares v. Clackamas County*, 2014 WL 1414305, at *4-8 (D. Or. Apr. 11, 2014); *see also Buquer v. City of Indianapolis*, 797 F. Supp. 2d 905 (S.D. Ind. 2011); *cf. Jimenez Moreno v. Napolitano*, 2014 WL 4814776, at *4-5 (N.D. Ill. Sept. 29, 2014) (dismissing Tenth Amendment claim in detainer class action in light of *Galarza*).

1                either lacks immigration status or notwithstanding such status is
2                removable under U.S. immigration law.

3    *See id.*

4        27.   The ICE detainer states on its face that the request to detain "takes

5   effect only if you serve a copy of this form on the subject." *Id.*

6        28.   An ICE detainer is not supported by a determination that there is

7   reason to believe that the subject individual is "likely to escape before a warrant

8   can be obtained," as is required to make a warrantless civil immigration arrest. 8

9   U.S.C. § 1357(a)(2); *Arizona v. United States*, -- U.S. --, 132 S. Ct. 2492, 2505-07

10  (2012) (finding Arizona statute permitting unlimited warrantless civil immigration

11  arrest authority preempted because it exceeded the limited authority granted to ICE

12  under 8 U.S.C. §1357(a)(2)); *Jimenez Moreno v. Napolitano*, 2016 WL 5720465

13  (N.D. Ill. Sept. 30, 2016) (declaring all warrantless immigration detainers in the six

14  state ICE Chicago Area of Responsibility null and void because the detainers

15  violate the limits of 8 U.S.C. § 1357(a)(2)).

16      **Defendants' Policy and Practice of Arresting Individuals Based Solely on**
17             **Immigration Detainers Remains Unabated.**

18        29.   Despite being facially invalid as a matter of constitutional and statutory

19  law, Sheriff Arpaio and Maricopa County have a policy, custom, and practice of

20  honoring ICE's immigration detainer requests without requiring any probable

21  cause determinations and without providing the subjects any notice or opportunity

22  to respond prior to arrest and detention.

1    30.   At the time of Ms. Gonzalez's arrest, the Director of Public

2    Information for the Maricopa County Sheriff's Office admitted that the Defendants

3    do not require probable cause before arrest and detention pursuant to an ICE

4    detainer, stating: "When a local agency wants to place a hold on somebody they

5    have to show us a probable cause statement to show us why they want us to hold

6    them. ICE does not, When they put a hold on somebody, we don't know why." Ex.

7    F, at 6.

8                        **Ms. Gonzalez's United States Citizenship**

9    31.   Because Ms. Gonzalez is a U.S. citizen, there is no legal authority to

10   arrest or detain her for a civil immigration violation, no legal authority that would

11   make her removable from this country, and no jurisdiction to place her in

12   immigration removal proceedings.

13       **Defendants' Unlawful Immigration Arrest and Detention in Solitary**
14       **Confinement of Ms. Gonzalez Based Solely on an Immigration Detainer**

15   32.   On March 19, 2016, Ms. Gonzalez participated in an act of civil

16   disobedience at a protest of a political rally held by the presidential campaign of

17   Donald J. Trump.   Ms. Gonzalez and two non-Hispanic protesters temporarily

18   blocked a highway that provided access to the event and were arrested.

19   33.   All three individuals were taken to the MCSO's 4th Avenue Jail for

20   routine processing.

34.   As part of MCSO's processing, Ms. Gonzalez reported that she was born in Mexico and presented a valid, unexpired State of Louisiana driver's license.  The State of Louisiana requires proof of citizenship or lawful immigration status before issuing a driver's license.[2]

35.   After MCSO completed its initial booking of all three protesters, Ms. Gonzalez was singled out for follow-up questioning by the ICE officer stationed in the jail. The other two non-Hispanic protesters were not questioned by ICE.

36.   ICE has admitted that the standard policy is that: "all foreign-born individuals who are booked into the Maricopa County Jail are interviewed by ICE personnel to determine alienage and removability and whether they would be an enforcement priority for the agency." Ex. G, at 1.

37.   The standard policy at the Maricopa County Jail, as described by ICE, violates the December 2014 Department of Justice's "Guidance for Federal Law Enforcement Agencies Regarding The Use of Race, Ethnicity, Gender, National Origin, Religion, Sexual Orientation, or Gender Identity." *See* Ex. H, at 8

---

[2] *See* Louisiana Dep't Public Safety Office of Motor Vehicles, Issuance of Driver's License, "Identification Requirements," *available at* http://web01.dps.louisiana.gov/omv1.nsf/58c968bd569b099986256cdc000806eb/037c1c72e5cbc226862564ae006ccdd2?OpenDocument (last visited Nov. 3, 2016).

1   (providing example guidance that law enforcement needs more than country of

2   birth to initiate immigration investigation).[3]

3       38.  Ms. Gonzalez provided the ICE officer with her full name, date of

4   birth, and other biographical information.

5       39.  Ms. Gonzalez then exercised her constitutional right to decline to

6   answer questions regarding her citizenship until she had an opportunity to speak

7   with an attorney.

8       40.  When Ms. Gonzalez declined to answer questions about her

9   citizenship, the ICE officer called her a "pain-in–the-ass-illegal." The officer,

10  without informing Ms. Gonzalez, then issued an ICE detainer requesting that

11  MCSO detain her for up to an additional 48 hours after its authority expired.  Ex. J.

12      41.  The ICE detainer request was not supported by a warrant or any other

13  probable cause determination by a detached and neutral judicial officer.  *Id.*

14      42.  ICE's detainer request did not provide MCSO with a particularized

15  showing of probable cause to arrest Ms. Gonzalez. Instead, the detainer stated –

16  falsely – that the reasons for its issuance were "the pendency of ongoing removal

17  proceedings" against Ms. Gonzalez and that "statements made voluntarily by the

18  subject to an immigration officer and/or other reliable evidence that affirmatively

---

[3] There are over 17 million United States citizens of foreign birth living in the United States. (44% of the U.S. foreign-born population). Ex. I, at 2.

1    indicate the subject either lacks immigration status or notwithstanding such status

2    is removable under U.S. immigration law." *Id.*

3        43.   In fact, no removal proceedings were or have ever been pending

4    against Ms. Gonzalez, and she made no statements indicating that she lacked

5    immigration status. On information and belief, there was also no evidence, reliable

6    or otherwise, that affirmatively indicated that she lacked immigration status or was

7    removable from the country.

8        44.   Upon information and belief, ICE issued the detainer against Ms.

9    Gonzalez based solely on the fact that she was born in Mexico.

10       45.   ICE did not provide MCSO with any information regarding why Ms.

11   Gonzalez's represented an immigration enforcement priority, information which is

12   required to justify her arrest as a matter of ICE policy.  *Id.*; Ex. K (ICE explaining

13   to law enforcement that on the detainer form "ICE must identify the enforcement

14   priority under which the individual falls."). ICE could not have provided any such

15   information, as none existed.

16       46.   In the evening of March 19, 2016, Ms. Gonzalez was brought before

17   an Arizona state court judge for an initial hearing on a Class 3 misdemeanor

18   charge—obstructing a highway. The judge ordered Ms. Gonzalez's immediate

19   release on her own recognizance. Ex. L.

1    47.    MCSO, however, refused to release Ms. Gonzalez and instead arrested

2    and detained her based on the ICE detainer and Defendants' policy, custom and

3    practice.

4    48.    Pursuant to Defendants' policy, custom and practice, MCSO never

5    served the detainer on Ms. Gonzalez, as required for the detention request to "take

6    effect." Ex. J.

7    49.    Pursuant to Defendants' policy, custom and practice, MCSO did not

8    provide Ms. Gonzalez with an opportunity to be heard as to the lawfulness of the

9    detainer before she was deprived of her liberty.

10    50.    MCSO then placed Ms. Gonzalez in solitary confinement overnight.

11    51.    The next morning, March 20, 2016, Ms. Gonzalez was shackled,

12    loaded in a van, and transported to an ICE facility.

13    52.    Once at the ICE facility, on information and belief, ICE officials did a

14    simple check of government databases and quickly ascertained that Ms. Gonzalez

15    was a U.S. citizen.  ICE released her that day.

16    **<u>COUNT I</u>**

17    **Unconstitutional Seizure and Deprivation of Liberty**
18    **(42 U.S.C. § 1983)**

19    53.    The foregoing allegations are repeated and incorporated as if fully set

20    forth herein.

54.   The Fourth Amendment to the U.S. Constitution prohibits "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

55.   The Fourteenth Amendment to the U.S. Constitution provides: "[N]or shall any state deprive any person of … liberty … without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

56.   Pursuant to the incorporation doctrine, the due process clause of the Fourteenth Amendment makes the Fourth Amendment applicable to state and local governments. *See e.g. Mapp v. Ohio*, 367 U.S. 643 (1961) (freedom from unreasonable search and seizure); *Aguilar v. Texas* 378 US 108 (1964) (requirements for a warrant).

57.   The Immigration and Nationality Act (INA) provides for warrantless arrests for civil immigration violations only if there is reason to believe that an individual is "likely to escape before a warrant can be obtained." 8 U.S.C. § 1357(a)(2), INA § 287(a)(2).

58.   Defendants caused the arrest and detention of Ms. Gonzalez based solely on a facially invalid ICE detainer and after a state judge ordered her release on her own recognizance.

1     59.    Defendants caused the arrest and detention of Ms. Gonzalez based

2  solely on a facially invalid ICE detainer despite knowing that she possessed a valid

3  Louisiana driver's license, for which proof of citizenship or lawful immigration

4  status is required, and despite not having probable cause to believe that she had

5  violated any immigration law.

6     60.    The ICE detainer for Ms. Gonzalez's arrest and detention was invalid

7  for at least the following reasons:

8          a.  It did not include, and was not accompanied by, a warrant, or

9              otherwise contain a determination of probable cause by a detached

10             and neutral judicial officer finding Ms. Gonzalez was a noncitizen and

11             in violation of the immigration laws subjecting her to arrest, detention,

12             or removal;

13         b.  It did not include, and was not accompanied by, any sworn declaration

14             or recitation of specific facts providing probable cause to believe that

15             Ms. Gonzalez was a noncitizen and in violation of the immigration

16             laws and subject to arrest, detention, or removal; and

17         c.  It did not include, and was not accompanied by, a determination that

18             Ms. Gonzalez was likely to escape before a warrant could be obtained

19             in order to be a permissible exercise of the limited warrantless civil

20             immigration arrest authority under 8 U.S.C. § 1357(a)(2).

1         d. It was never served on Ms. Gonzalez, and thus never took effect as a

2           request for detention.

3       61.   Defendants policy, custom and practice of honoring immigration

4   detainers caused Ms. Gonzalez's arrest and detention in violation of her rights

5   under the Fourth Amendment, her substantive due process rights under the

6   Fourteenth Amendment, and her right to be free from a warrantless, civil

7   immigration arrest under federal statute.

8       62.   As a proximate and reasonably foreseeable result of the actions of

9   Defendants, Ms. Gonzalez suffered injuries, including pain and suffering,

10  humiliation, and emotional harm.

11  **<u>COUNT II</u>**

12  **Unconstitutional Violation of Procedural Due Process**

13  **(42 U.S.C. § 1983)**

14      63.   The foregoing allegations are repeated and incorporated as if fully set

15  forth herein.

16      64.   Defendants' policy, custom and practice failed to follow the

17  applicable, governing laws, statutes, and regulations, and deprived Ms. Gonzalez

18  of her liberty without affording her the procedural due process guarantees of the

19  Fourteenth Amendment as follows:

17

1          a.  Defendants caused Ms. Gonzalez to be detained, including in solitary

2               confinement, without affording her adequate notice or an opportunity

3               to respond to the immigration detainer request; and

4          b.  Defendants caused Ms. Gonzalez to be detained without probable

5               cause to believe that she was a noncitizen or that she was otherwise in

6               violation of the immigration laws and subject to detention;

7     65.   As a proximate and reasonably foreseeable result of the actions of

8  Defendants, Ms. Gonzalez suffered injuries, including pain and suffering,

9  humiliation, and emotional harm.

10                                **<u>COUNT III</u>**

11            **False Arrest and False Imprisonment Under Arizona Law**

12

13     66.   The foregoing allegations are repeated and incorporated as if fully set

14  forth herein.

15     67.   Defendants intentionally caused Ms. Gonzalez to be arrested and

16  detained without having probable cause or legal justification to believe she was a

17  noncitizen, or that she was otherwise in violation of the immigration laws and

18  subject to arrest, detention, or removal.

19     68.   Defendants intentionally caused Ms. Gonzalez to be arrested and

20  detained without legal authority for her warrantless arrest under federal or state

21  law.

1    69.    Ms. Gonzalez was aware of her arrest and detention and did not

2    consent to it.

3    70.    At all times during Ms. Gonzalez's arrest and detention, Defendants

4    were aware, or reasonably should have been aware, that they lacked the authority

5    to arrest and detain Ms. Gonzalez under the governing laws and policies and that

6    their conduct was unlawful.

7    71.    As a proximate and reasonably foreseeable result of the actions of

8    Defendants, Ms. Gonzalez suffered injuries, including pain and suffering,

9    humiliation, and emotional harm.

10

11    **<u>JURY DEMAND</u>**

12    Pursuant to Federal Rule of Civil Procedure 38(b), Ms. Gonzalez demands a

13    trial by jury as to all issues so triable.

14

1

## **PRAYER FOR RELIEF**

2   WHEREFORE, Plaintiff Ms. Gonzalez respectfully requests that the Court
3   enter judgment:

4   A.   Awarding compensatory damages to Ms. Gonzalez against
5   Defendants for violating Ms. Gonzalez's rights under the U.S. Constitution by
6   arresting and detaining Ms. Gonzalez based solely on an immigration detainer, and
7   in excess of Defendants' warrantless arrest authority under federal and state law;

8   B.   Awarding prejudgment interest to Ms. Gonzalez on any award of
9   damages to the extent permitted by law;

10   C.   Awarding reasonable attorneys' fees and costs to Ms. Gonzalez
11   pursuant to 42 U.S.C. § 1988 and/or any other provisions of law applicable
12   common-law provisions; and

13   D.   Granting such other relief as they Court may deem just and proper
14   under the circumstances.

Dated: December 14, 2016

By:   s/ Ray A. Ybarra Maldonado
Ray A. Ybarra Maldonado
Ariz. Bar # 027076
LAW OFFICE OF RAY A. YBARRA
MALDONADO, PLC
2701 East Thomas Road, Suite A
Phoenix, Arizona 85016
Telephone: (602) 910-4040
Facsimile: (602) 910-4444
ray@abogadoray.com

Mark Fleming*
NY Bar # 4487534
NATIONAL IMMIGRANT JUSTICE
CENTER
208 South LaSalle Street, Suite 1300
Chicago, Illinois 60604
Telephone: (312) 660-1628
Facsimile: (312) 660-1505
mfleming@heartlandalliance.org

Matthew J. Piers*
José J. Behar*
Chirag G. Badlani*
HUGHES SOCOL PIERS RESNICK &
DYM, LTD.
70 West Madison Street, Suite 4000
Chicago, IL 60657
Telephone:  (312) 580-0100
Facsimile: (312) 604-2777
mpiers@hsplegal.com
jbehar@hsplegal.com
cbadlani@hsplegal.com

R. Andrew Free*
LAW OFFICE OF R. ANDREW FREE
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221

Facsimile: (615) 829-8959
andrew@immigrantcivilrights.com

*Attorneys for Plaintiff*

*\*pro hac vice* application forthcoming