Ray A. Ybarra Maldonado
Ariz. Bar # 027076
LAW OFFICE OF RAY A. YBARRA MALDONADO, PLC
2701 East Thomas Road, Suite A
Phoenix, Arizona 85016
Telephone: (602) 910-4040
Facsimile: (602) 910-4444
ray@abogadoray.com

Mark Fleming*
NY Bar # 4487534
NATIONAL IMMIGRANT JUSTICE CENTER
208 South LaSalle Street, Suite 1300
Chicago, Illinois 60604
Telephone: (312) 660-1628
Facsimile: (312) 660-1505
mfleming@heartlandalliance.org

Matthew J. Piers*
José J. Behar*
Chirag G. Badlani*
HUGHES SOCOL PIERS RESNICK & DYM LTD.
70 West Madison Street, Suite 4000
Chicago, IL 60657
Telephone:  (312) 580-0100
Facsimile: (312) 604-2777
mpiers@hsplegal.com
jbehar@hsplegal.com
cbadlani@hsplegal.com

R. Andrew Free*
LAW OFFICES OF R. ANDREW FREE
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959
andrew@immigrantcivilrights.com

*Attorneys for Plaintiff*
*Admitted pro hac vice*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jacinta Gonzalez Goodman, | ) |
| | ) |
| *Plaintiff*, | ) **Case No. CV 16-4388-PHX-JJT** |
| | ) **(MHB)** |
| v. | ) |
| | ) **Judge John J. Tuchi** |
| | ) |
| Paul Penzone, | ) **Magistrate Judge Michelle H Burns** |
| in his official capacity as Sheriff of | ) |
| Maricopa County, Arizona; Maricopa | ) **First Amended Complaint** |
| County, Arizona; and U.S. Immigration | ) |
| and Customs Enforcement Officer | ) **Jury Trial Demanded** |
| F/N/U Lindros, | ) |
| | ) |
| *Defendants*. | ) |

1      **FIRST AMENDED COMPLAINT**

2          Plaintiff Jacinta Gonzalez Goodman ("Plaintiff" or "Ms. Gonzalez"), by and

3  through her undersigned counsel, hereby complains as follows against Defendants

4  Sheriff of Maricopa County, Paul Penzone, Maricopa County, Arizona, and Officer

5  Lindros, an agent with U.S. Immigration and Customs Enforcement ("ICE").

6          **STATEMENT OF THE CASE**

7          1.      Plaintiff brings this action to secure and vindicate her rights under the

8  First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution

9  and the Arizona Tort Claims Act, ARIZ. REV. STAT. § 12-820, *et seq.*, based on her

1   false arrest and detention by Defendants, and based on Defendant Maricopa

2   County's policy, custom and practice of subjecting individuals to arrest, detention,

3   and transfer of custody without probable cause, notice or opportunity to be heard.

4         2.      Plaintiff Jacinta Gonzalez Goodman ("Ms. Gonzalez") is a natural born

5   United States citizen who was born in Mexico to a Mexican citizen father and a

6   United States citizen mother.

7         3.      On March 19, 2016, officers of the Maricopa County Sheriff's Office

8   ("MCSO") unlawfully arrested Ms. Gonzalez, detained her overnight in solitary

9   confinement, and transferred her into U.S. Immigration and Customs Enforcement

10  ("ICE") custody without probable cause and based solely on an immigration

11  detainer request from ICE.

12        4.      Following her arrest, MCSO and Defendant Lindros, an ICE Agent,

13  singled Ms. Gonzalez out for immigration questioning based on her ethnicity, place

14  of birth, and national origin. After exercising her constitutional right to decline to

15  answer questions regarding her citizenship until she had an opportunity to speak

16  with an attorney, Defendant Lindros called her a "pain-in-the-ass-illegal" and

17  issued an ICE detainer requesting that the MCSO detain Ms. Gonzalez for up to an

18  additional 48 hours after it would otherwise release her, so ICE could assume

19  custody (i.e., transfer) of Ms. Gonzalez directly from inside the MCSO's jail.

3

5.    MCSO complied with Defendant Lindros' request to further detain Ms. Gonzalez so that she could be transferred into ICE custody.

6.    ICE utilizes immigration detainer requests to seek the arrest, detention, and transfer of individuals for possible civil immigration violations.

7.    As was well-known to the Defendants, ICE's detainer requests are not supported by probable cause; not supported by a warrant or any other probable cause determination by a detached, neutral judicial officer; and are not in accordance with the limited warrantless arrest authority for alleged civil immigration violations.

8.    Compliance with ICE's immigration detainers is voluntary.  Local law enforcement agencies are not required to comply with ICE immigration detainers.

9.    Maricopa County Sheriff's officers had Ms. Gonzalez interviewed for immigration purposes, and then arrested, detained, and transferred pursuant to a longstanding policy, custom, and practice of Defendants Sheriff Penzone and Maricopa County (together, "County Defendants") to unlawfully single individuals out for immigration questioning based solely on their ethnicity, place of birth, and national origin, and then unlawfully arrest, detain, and transfer individuals based solely on facially invalid and voluntary ICE detainers.

10.    Pursuant to the policies, practices and customs of the County Defendants, Ms. Gonzalez was not served with a copy of the ICE immigration

4

1    detainer or otherwise afforded an opportunity to be heard as to why her arrest and

2    transfer was unlawful.

3          11.   By issuing a detainer not supported by a warrant or any other probable

4    cause determination and that was not served on Ms. Gonzalez, and by issuing a

5    detainer based on Ms. Gonzalez's ethnicity, place of birth, and national origin, and

6    based on her exercise of her constitutional right not to speak, Defendant Lindros

7    violated Ms. Gonzalez's constitutionally protected rights under the First, Fourth

8    and Fifth Amendments.

9          12.   By causing the arrest, detention, and transfer of Ms. Gonzalez pursuant

10   to the above-stated custom, policy and practice, the County Defendants acted with

11   deliberate indifference to and in violation of her rights under the Fourth and

12   Fourteenth Amendments to the United States Constitution, as well federal

13   immigration law. The County Defendants, likewise, subjected her to false arrest

14   and imprisonment in violation of Arizona law.

15                      **JURISDICTION, NOTICE AND VENUE**

16         13.   This Court has subject matter jurisdiction over Ms. Gonzalez's claims

17   under the First, Fourth, Fifth, and Fourteenth Amendments to the United States

18   Constitution, 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights). This

19   Court has supplemental jurisdiction over Ms. Gonzalez's state tort claims under 28

20   U.S.C. § 1367(a) (supplemental jurisdiction).

14.   Ms. Gonzalez filed her Notice of Claim, in accordance ARIZ. REV. STAT. §12-821.01(A), which was received on August 25, 2016. The statutory sixty days for Defendant's response expired on October 24, 2016. ARIZ. REV. STAT. §12-821.01(E).

15.   Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1), (b)(2), because all Defendants reside in the district and a substantial part of the events giving rise to Ms. Gonzalez's claims occurred in this judicial district.

## THE PARTIES

16.   Plaintiff Jacinta Gonzalez Goodman resides in Phoenix, Arizona ("Maricopa County"). Ms. Gonzalez has been a U.S. citizen since birth and, at all times pertinent hereto, has had a valid, unexpired U.S. passport.

17.   Defendant Paul Penzone is the Sheriff of Maricopa County, Arizona. Defendant Penzone is the head of the MCSO and is responsible for formulating, approving, implementing, and/or enforcing the Maricopa County policy, custom, and practice of identifying individuals for immigration questioning, as well as arresting, detaining, and transferring individuals based on voluntary immigration detainers. Defendant Penzone is sued in his official capacity.

1    18.    Defendant Maricopa County is a political subdivision of the State of

2    Arizona that can be sued in its own name. Defendant Maricopa County includes,

3    oversees, and is responsible for the MCSO and its county jail system.

4    19.    At all times relevant to this action, Defendant Lindros, whose first

5    name is unknown, was an ICE agent and/or an ICE supervisor stationed at the

6    Maricopa County 4th Avenue Jail. Defendant Lindros personally participated in

7    the issuance of an ICE detainer for Ms. Gonzalez. He is sued in his individual

8    capacity. At all times relevant to this action, Defendant Lindros was acting within

9    the scope of his employment with ICE, an executive agency of the United States.

10   **FACTUAL AND LEGAL ALLEGATIONS**

11   **County Defendants' History of Unconstitutional Policies and Practices of**
12   **Arresting Individuals for Alleged Civil Immigration Violations**

13   20.    The County Defendants have a long history of aggressively – and

14   illegally – collaborating with ICE to arrest individuals for alleged civil immigration

15   violations. In February 2007, the MCSO entered into a memorandum of agreement

16   with ICE, under 8 U.S.C. § 1357(g), Immigration and Nationality Act (INA) §

17   287(g) (a.k.a. "287(g) agreement")), that permitted MCSO officers to conduct

18   prescribed civil immigration enforcement, including issuing and executing

19   immigration detainers. *See* Ex A.

20   21.    Pursuant to the 287(g) agreement, MCSO conducted its civil

21   immigration enforcement under direct ICE supervision. *See Id.*

22.   In June 2008, the United States Department of Justice (DOJ) opened an expansive civil rights investigation into whether MCSO had a pattern and practice of racial-profiling Latinos and otherwise violating the constitutional rights of Latinos in its enforcement practices. Ex. B.

23.   On December 15, 2011, DOJ issued a scathing report that found rampant, systemic racial-profiling and constitutional violations committed by the MCSO against Latinos in the county. *Id.*

24.   That same day, the Secretary for the Department of Homeland Security (DHS) was forced to terminate ICE's 287(g) agreement with MCSO. *See* Ex. C.

25.   Despite the DOJ civil rights findings, and pursuant to the policy, practice and custom of the County Defendants, MCSO and ICE have continued to aggressively collaborate in civil immigration arrests through immigration detainers. *See, e.g.,* Transactional Record Access Clearinghouse (TRAC), "ICE Detainers Issued for Facilities by Level of Most Serious Conviction," (Feb. 11, 2014), *available at http://trac.syr.edu/immigration/reports/343/include/table3.html* (last visited Nov. 3, 2016) (ICE Freedom of Information Action (FOIA) data showing in FY2012 & most of FY2013 that more than 11,000 detainers issued to MCSO jails, more than 85% of which against individuals with no criminal convictions or very minor offenses).

1    26.   The County Defendants have a policy and practice of referring all

2    foreign-born individuals booked into the Maricopa County Jail to ICE for

3    interviews by ICE personnel.  *See* Ex. G.

4    **Immigration Detainers Fail to Conform with Basic Constitutional Protections**
5    **and Violate the Limited Warrantless Arrest Authority**
6    **For Civil Immigration Violations**

7    27.   An immigration detainer is a boilerplate, checkbox form issued by any

8    rank and file immigration officer for a civil immigration purpose. Ex. D; *see* 8

9    C.F.R. § 287.7(b) (authorizing all "deportation officers" and "immigration

10   enforcement agents," among others, to issue detainers); 8 C.F.R. § 287.7(a)

11   (describing the purpose of an immigration detainer).

12   28.   A detainer is a request that the law enforcement agency ("LEA") arrest

13   and detain the individual for up to an additional 48 hours beyond when the LEA's

14   legal detention authority expires, in order to allow ICE to assume custody (i.e.,

15   transfer) of an individual directly from LEA custody. *See* Ex. D.[1]

_____

[1] Immigration detainers have been consistently held to be voluntary requests to state and
local law enforcement agencies. *Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014)
(holding detainers voluntary and stating "Since at least 1994, and perhaps as early as
1988, ICE (and its precursor INS) have consistently construed detainers as requests rather
than mandatory orders."); Letter from Daniel Ragsdale, Acting Director of ICE, to U.S.
House of Representatives (Feb. 25, 2014) (Ex. E). U.S. district courts have followed suit.
*Morales v. Chadbourne*, 996 F. Supp. 2d 19, 40 (D.R.I. 2014), *aff'd* 793 F.3d 208 (1st
Cir. 2015); *Miranda-Olivares v. Clackamas County*, 2014 WL 1414305, at *4-8 (D. Or.
Apr. 11, 2014); *Orellana v. Nobles County*, No. 0:15-cv-03852, -- F. Supp.3d --, 2017
WL 72397, at *3-4 (D. Minn. Jan. 6, 2017);  *Mercado v. Dallas County*, No. 3:15-cv-
3841, 2017 WL 169102 at *8-9  (N.D. Tex. Jan. 17, 2017);  *see also Buquer v. City of
Indianapolis*, 797 F. Supp. 2d 905 (S.D. Ind. 2011); *cf. Jimenez Moreno v. Napolitano*,

1       29.   A detainer is not supported by warrant or any other probable cause

2   determination by a detached and neutral judicial officer or otherwise. *See* Ex. D.

3       30.   ICE detainers are not supported by sworn, particularized showings of

4   probable cause that the subject is a noncitizen and removable. *See id.*

5       31.   The detainer form, instead, contains boxes to check and select from a

6   wide-ranging list of generic potential sources of information that may or may not

7   form the basis of a finding of probable cause to make an arrest, including:

8           • the pendency of ongoing removal proceedings against the subject;

9           • biometric confirmation of the subject's identity and a records check
10             of federal databases that affirmatively indicate, by themselves or in
11             addition to other reliable information, that the subject either lacks
12             immigration status or notwithstanding such status is removable
13             under U.S. immigration law; and/or

14           • statements made voluntarily by the subject to an immigration officer
15             and/or other reliable evidence that affirmatively indicate the subject
16             either lacks immigration status or notwithstanding such status is
17             removable under U.S. immigration law.

18   *See id.*

19       32.   The ICE detainer states on its face that the request to detain "takes

20   effect only if you serve a copy of this form on the subject." *Id.*

21       33.   An ICE detainer is not supported by a determination that there is

22   reason to believe that the subject individual is "likely to escape before a warrant

23   can be obtained," as is required to make a warrantless civil immigration arrest. 8

---

2014 WL 4814776, at *4-5 (N.D. Ill. Sept. 29, 2014) (dismissing Tenth Amendment
claim in detainer class action in light of *Galarza*).

1    U.S.C. § 1357(a)(2); *Arizona v. United States*, -- U.S. --, 132 S. Ct. 2492, 2505-07

2    (2012) (finding Arizona statute permitting unlimited warrantless civil immigration

3    arrest authority preempted because it exceeded the limited authority granted to ICE

4    under 8 U.S.C. §1357(a)(2)); *Jimenez Moreno v. Napolitano*, 2016 WL 5720465

5    (N.D. Ill. Sept. 30, 2016) (declaring warrantless immigration detainers in the six-

6    state ICE Chicago Area of Responsibility null and void because the detainers

7    violate the limits of 8 U.S.C. § 1357(a)(2)).

8    **County Defendants' Policy and Practice of Arresting and Transferring**
9    **Individuals Based Solely on Immigration Detainers Continues Unabated.**

10   34.    Despite being facially invalid as a matter of constitutional and statutory

11   law, at all times relevant to this action, the County Defendants had a policy,

12   custom, and practice of honoring ICE's immigration detainer requests without

13   requiring any probable cause determinations and without providing the subjects

14   any notice or opportunity to respond prior to arrest, detention, and transfer.

15   35.    At the time of Ms. Gonzalez's arrest and transfer, the Director of

16   Public Information for MCSO admitted that the County Defendants do not require

17   probable cause before arrest, detention, and transfer pursuant to an ICE detainer,

18   stating: "When a local agency wants to place a hold on somebody they have to

19   show us a probable cause statement to show us why they want us to hold them.

20   ICE does not, When they put a hold on somebody, we don't know why." Ex. F, at

21   6. (also confirming MCSO transferred Ms. Gonzalez to ICE inside the MCSO jail).

11

1        **Ms. Gonzalez's United States Citizenship**

2        36.  Because Ms. Gonzalez is a U.S. citizen, there is no legal authority to

3    arrest or detain her for a civil immigration violation, no legal authority that would

4    make her removable from this country, and no jurisdiction to place her in

5    immigration removal proceedings.

6        **Defendants' Unlawful Profiling and Immigration Arrest, Detention, and**
7        **Transfer of Ms. Gonzalez Based Solely on an Immigration Detainer**

8        37.  On March 19, 2016, Ms. Gonzalez participated in an act of civil

9    disobedience at a protest of a political rally held by the presidential campaign of

10   Donald J. Trump. Ms. Gonzalez and two non-Hispanic protesters temporarily

11   blocked a highway that provided access to the event and were arrested.

12       38.   All three individuals were taken to the MCSO's 4th Avenue Jail for

13   routine processing.

14       39.   As part of MCSO's processing, Ms. Gonzalez reported that she was

15   born in Mexico and presented a valid, unexpired State of Louisiana driver's

16   license. The State of Louisiana requires proof of citizenship or lawful immigration

17   status before issuing a driver's license.[2]

---

[2] *See* Louisiana Dep't Public Safety Office of Motor Vehicles, Issuance of Driver's License, "Identification Requirements," *available at* http://web01.dps.louisiana.gov/omv1.nsf/58c968bd569b099986256cdc000806eb/037c1c72e5cbc226862564ae006ccdd2?OpenDocument (last visited Mar. 6, 2017).

1    40.   After MCSO completed its initial booking of all three protesters, Ms.

2    Gonzalez was singled out by County Defendants for follow-up questioning by

3    Defendant Lindros, the ICE officer stationed in the jail. The other two non-

4    Hispanic protesters were not questioned by ICE.

5    41.   ICE has admitted that the standard policy is that: "all foreign-born

6    individuals who are booked into the Maricopa County Jail are interviewed by ICE

7    personnel to determine alienage and removability and whether they would be an

8    enforcement priority for the agency." Ex. G, at 1.

9    42.   The standard policy at the Maricopa County Jail, as described by ICE,

10   violates the December 2014 Department of Justice's "Guidance for Federal Law

11   Enforcement Agencies Regarding The Use of Race, Ethnicity, Gender, National

12   Origin, Religion, Sexual Orientation, or Gender Identity." *See* Ex. H, at 8

13   (providing example guidance that law enforcement needs more than country of

14   birth to initiate immigration investigation).[3]

15   43.   Ms. Gonzalez provided Defendant Lindros with her full name, date of

16   birth, and other biographical information.

---

[3] There are over 17 million United States citizens of foreign birth living in the United States. (44% of the U.S. foreign-born population). Ex. I, at 2.

44.   Ms. Gonzalez then exercised her constitutional right to decline to answer questions regarding her citizenship until she had an opportunity to speak with an attorney.

45.   When Ms. Gonzalez declined to answer questions about her citizenship, Defendant Lindros called her a "pain–in–the-ass-illegal." Defendant Lindros, without informing Ms. Gonzalez, then issued an ICE detainer requesting that MCSO detain her for up to an additional 48 hours after its authority expired, so ICE could assume custody of Ms. Gonzalez directly from the MCSO. Ex. J.

46.   The ICE detainer request was not supported by a warrant or any other probable cause determination by a detached and neutral judicial officer. *Id.*

47.   ICE's detainer request did not provide MCSO with a particularized showing of probable cause to arrest Ms. Gonzalez. Instead, the detainer stated – falsely – that the reasons for its issuance were "the pendency of ongoing removal proceedings" against Ms. Gonzalez and that "statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." *Id.*

48.   In fact, no removal proceedings were or have ever been pending against Ms. Gonzalez, and she made no statements indicating that she lacked immigration status. On information and belief, there was also no evidence, reliable

1    or otherwise, that affirmatively indicated that she lacked immigration status or was

2    removable from the country.

3        49.   Defendant Lindros issued the detainer against Ms. Gonzalez based on

4    the fact that she was born in Mexico, based on her ethnicity, and based on her

5    exercise of her constitutional right to decline to answer questions regarding her

6    citizenship.

7        50.   ICE did not provide MCSO with any information regarding why Ms.

8    Gonzalez represented an immigration enforcement priority, information which was

9    required to justify her arrest as a matter of ICE policy. *Id.*; Ex. K (ICE explaining

10   to law enforcement that on the detainer form "ICE must identify the enforcement

11   priority under which the individual falls."). ICE could not have provided any such

12   information, as none existed.

13       51.   In the evening of March 19, 2016, Ms. Gonzalez was brought before

14   an Arizona state court judge for an initial hearing on a Class 3 misdemeanor

15   charge—obstructing a highway. The judge ordered Ms. Gonzalez's immediate

16   release on her own recognizance. Ex. L.

17       52.   MCSO, however, refused to release Ms. Gonzalez and instead arrested

18   and detained her based on the ICE detainer and the County Defendants' policy,

19   custom and practice.

53.   Pursuant to the County Defendants' policy, custom and practice, MCSO never served the detainer on Ms. Gonzalez, as required for the detention request to "take effect." Ex. J.

54.   Pursuant to the County Defendants' policy, custom and practice, MCSO did not provide Ms. Gonzalez with an opportunity to be heard as to the lawfulness of the detainer before she was deprived of her liberty.

55.   MCSO then placed Ms. Gonzalez in solitary confinement overnight.

56.   The next morning, March 20, 2016, MCSO transferred Ms. Gonzalez to ICE custody inside the MCSO jail. ICE shackled Ms. Gonzalez, loaded her in a van, and transported her to an ICE facility.

57.   Once at the ICE facility, on information and belief, ICE officials did a simple check of government databases and quickly ascertained that Ms. Gonzalez was a U.S. citizen. ICE released her that day.

## COUNT I
### Unconstitutional Seizure and Deprivation of Liberty
### (42 U.S.C. § 1983)
### Against County Defendants

58.   The foregoing allegations are repeated and incorporated as if fully set forth herein.

59.   The Fourth Amendment to the U.S. Constitution prohibits "unreasonable searches and seizures" and provides that "no Warrants shall issue,

1   but upon probable cause, supported by Oath or affirmation, and particularly

2   describing the place to be searched, and the persons or things to be seized."

3       60.   The Fourteenth Amendment to the U.S. Constitution provides: "[N]or

4   shall any state deprive any person of … liberty … without due process of law; nor

5   deny to any person within its jurisdiction the equal protection of the laws."

6       61.   Pursuant to the incorporation doctrine, the due process clause of the

7   Fourteenth Amendment makes the Fourth Amendment applicable to state and local

8   governments. *See e.g. Mapp v. Ohio*, 367 U.S. 643 (1961) (freedom from

9   unreasonable search and seizure); *Aguilar v. Texas* 378 US 108 (1964)

10  (requirements for a warrant).

11      62.   The INA provides for warrantless arrests for civil immigration

12  violations only if there is reason to believe that an individual is "likely to escape

13  before a warrant can be obtained." 8 U.S.C. § 1357(a)(2), INA § 287(a)(2).

14      63.   The County Defendants caused the arrest, detention, and in-custody

15  transfer of Ms. Gonzalez to ICE for further detention based solely on a facially

16  invalid ICE detainer and after a state judge ordered her released on her own

17  recognizance.

18      64.   The County Defendants caused the detention and transfer of Ms.

19  Gonzalez based solely on a facially invalid ICE detainer despite knowing that she

20  possessed a valid Louisiana driver's license, for which proof of citizenship or

1  lawful immigration status is required, and despite not having probable cause to

2  believe that she had violated any immigration law.

3      65.   The ICE detainer for Ms. Gonzalez's detention was invalid for at least

4  the following reasons:

5          a.  It did not include, and was not accompanied by, a warrant, or

6              otherwise contain a determination of probable cause by a detached

7              and neutral judicial officer finding Ms. Gonzalez was a noncitizen and

8              in violation of the immigration laws subjecting her to arrest, detention,

9              or removal;

10         b.  It did not include, and was not accompanied by, any sworn declaration

11             or recitation of specific facts providing probable cause to believe that

12             Ms. Gonzalez was a noncitizen and in violation of the immigration

13             laws and subject to arrest, detention, or removal;

14         c.  It did not include, and was not accompanied by, a determination that

15             Ms. Gonzalez was likely to escape before a warrant could be obtained

16             in order to be a permissible exercise of the limited warrantless civil

17             immigration arrest authority under 8 U.S.C. § 1357(a)(2); and

18         d.  It was never served on Ms. Gonzalez, and thus never took effect as a

19             request for detention.

18

66.   The County Defendants' policy, custom and practice of honoring immigration detainers caused Ms. Gonzalez's arrest, detention, and transfer for further detention in violation of her rights under the Fourth Amendment, her substantive due process rights under the Fourteenth Amendment, and her right to be free from a warrantless, civil immigration arrest under federal statute.

67.   As a proximate and reasonably foreseeable result of the actions of the County Defendants, Ms. Gonzalez suffered injuries, including pain and suffering, humiliation, and emotional harm.

**COUNT II**
**Unconstitutional Violation of Procedural Due Process**
**(42 U.S.C. § 1983)**
**Against County Defendants**

68.   The foregoing allegations are repeated and incorporated as if fully set forth herein.

69.   The County Defendants' policy, custom and practice failed to follow the applicable, governing laws, statutes, and regulations, and deprived Ms. Gonzalez of her liberty without affording her the procedural due process guarantees of the Fourteenth Amendment as follows:

a. The County Defendants caused Ms. Gonzalez to be detained, including in solitary confinement, and transferred for further detention

19

1         without affording her adequate notice or an opportunity to respond to

2         the immigration detainer request; and

3      b.  The County Defendants caused Ms. Gonzalez to be detained and

4         transferred for further detention without probable cause to believe that

5         she was a noncitizen or that she was otherwise in violation of the

6         immigration laws and subject to detention.

7      70.   As a proximate and reasonably foreseeable result of the actions of the

8  County Defendants, Ms. Gonzalez suffered injuries, including pain and suffering,

9  humiliation, and emotional harm.

10                              **COUNT III**

11              **Unconstitutional Violation of Equal Protection**

12                   **(42 U.S.C. § 1983)**

13               **Against County Defendants**

14

15      71.   The foregoing allegations are repeated and incorporated as if fully set

16  forth herein.

17      72.   The County Defendants' policy, custom and practice failed to follow

18  the applicable governing laws, statutes, and regulations, and deprived Ms.

19  Gonzalez of equal protection under the Fourteenth Amendment as follows:

20      a.   The County Defendants caused Ms. Gonzalez to be reported to ICE

21         and/or Defendant Lindros solely based on her place of birth, foreign

22         sounding name, and/or Hispanic appearance.

b. The County Defendants treated Ms. Gonzalez as presumptively subject to possible removal as an "alien" on the basis of her place of birth and/or Hispanic identity.

73. As a proximate and reasonably foreseeable result of the actions of the County Defendants, Ms. Gonzalez suffered injuries, including pain and suffering, humiliation, and emotional harm.

**COUNT IV**

**False Arrest and False Imprisonment Under Arizona Law**
**Against County Defendants**

74. The foregoing allegations are repeated and incorporated as if fully set forth herein.

75. The County Defendants intentionally caused Ms. Gonzalez to be arrested and detained without having probable cause or legal justification to believe she was a noncitizen, or that she was otherwise in violation of the immigration laws and subject to arrest, detention, or removal.

76. The County Defendants intentionally caused Ms. Gonzalez to be arrested and detained without legal authority for her warrantless arrest under federal or state law.

77. Ms. Gonzalez was aware of her arrest and detention and did not consent to it.

78.   At all times during Ms. Gonzalez's arrest and detention, the County Defendants were aware, or reasonably should have been aware, that they lacked the authority to arrest and detain Ms. Gonzalez under the governing laws and policies and that their conduct was unlawful.

79.   As a proximate and reasonably foreseeable result of the actions of the County Defendants, Ms. Gonzalez suffered injuries, including pain and suffering, humiliation, and emotional harm.

## COUNT V
### Unconstitutional Seizure and Deprivation of Liberty
### (*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971))
### Against Defendant Lindros

80.   The foregoing allegations are repeated and incorporated as if fully set forth herein.

81.   Defendant Lindros caused the issuance of the detainer against Ms. Gonzalez without probable cause to believe that she was an alien subject to detention and removal. The issuance constituted an unreasonable seizure in violation of Ms. Gonzalez's rights under the Fourth Amendment and caused an unlawful deprivation of liberty in violation of her due process rights.

82.   Defendant Lindros issued a facially invalid ICE detainer despite knowing that Ms. Gonzalez possessed a valid Louisiana driver's license, for which

1   proof of citizenship or lawful immigration status is required, and despite not

2   having probable cause to believe that she had violated any immigration law.

3      83.   The ICE detainer for Ms. Gonzalez's detention was invalid for at least

4   the following reasons:

5      a.  It did not include, and was not accompanied by, a warrant, or

6          otherwise contain a determination of probable cause by a detached

7          and neutral judicial officer finding Ms. Gonzalez was a noncitizen and

8          in violation of the immigration laws subjecting her to arrest, detention,

9          or removal;

10     b.  It did not include, and was not accompanied by, any sworn declaration

11         or recitation of specific facts providing probable cause to believe that

12         Ms. Gonzalez was a noncitizen and in violation of the immigration

13         laws and subject to arrest, detention, or removal;

14     c.  It purported to authorize 48 hours of detention and transfer to ICE

15         custody without a prompt probable cause hearing;

16     d.  It did not include, and was not accompanied by, a determination that

17         Ms. Gonzalez was likely to escape before a warrant could be obtained

18         in order to be a permissible exercise of the limited warrantless civil

19         immigration arrest authority under 8 U.S.C. § 1357(a)(2); and

1        e.  It was never served on Ms. Gonzalez, and thus never took effect as a

2            request for detention.

3    84.  As a proximate and reasonably foreseeable result of the actions of

4  Defendant Lindros, Ms. Gonzalez suffered injuries, including pain and suffering,

5  humiliation, and emotional harm.

6                                **COUNT VI**

7                **Unconstitutional Violation of Equal Protection**
8        (***Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics***,
9                            **403 U.S. 388 (1971))**
10                        **Against Defendant Lindros**

11   85.  The foregoing allegations are repeated and incorporated as if fully set

12  forth herein.

13   86.  Defendant Lindros' issuance of the detainer against Ms. Gonzalez

14  based on her Hispanic ethnicity violated her right to be free from discrimination on

15  the basis of ethnicity under the equal protection clause of the Fifth Amendment.

16   87.  Defendant Lindros issued a facially invalid ICE detainer based solely

17  on Ms. Gonzalez's place of birth and her ethnicity.

18   88.  As a proximate and reasonably foreseeable result of the actions of

19  Defendant Lindros, Ms. Gonzalez suffered injuries, including pain and suffering,

20  humiliation, and emotional harm.

21                                **COUNT VII**

22        **Unconstitutional Violations of Due Process and 8 U.S.C. § 1357**

24

1      **(*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,**
2      **403 U.S. 388 (1971))**
3      **Against Defendant Lindros**

4      89.   The foregoing allegations are repeated and incorporated as if fully set

5  forth herein.

6      90.   A federal agency's failure to follow its own governing statutes and

7  regulations violates due process of law guaranteed by the Fifth Amendment of the

8  United States Constitution.

9      91.   Defendant Lindros violated the Fifth Amendment by acting in the

10  following ways:

11         a.  Violating the terms of 8 U.S.C. § 1357, as interpreted by the

12            courts, by issuing a detainer on less than probable cause; and

13         b.  Causing Ms. Gonzalez to be detained without affording notice of

14            the basis for the detention and an opportunity to respond.

15      92.   As a proximate and reasonably foreseeable result of the actions of

16  Defendant Lindros, Ms. Gonzalez suffered injuries, including pain and suffering,

17  humiliation, and emotional harm.

18                  **<u>COUNT VIII</u>**
19    **Unconstitutional Violation of First Amendment Right to Freedom of Speech**
20    **(*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,**
21      **403 U.S. 388 (1971))**
22      **Against Defendant Lindros**

1    93.   The foregoing allegations are repeated and incorporated as if fully set

2    forth herein.

3    94.   Ms. Gonzalez asserted her First Amendment right to freedom of

4    speech by asserting her Fifth Amendment right against self-incrimination,

5    constituting speech protected under the First Amendment.

6    95.   Defendant Lindros intended to and did retaliate against Ms. Gonzalez

7    for her exercise of her First Amendment right to freedom of speech, and his desire

8    to retaliate against Ms. Gonzalez caused him to issue an ICE detainer against her.

9    96.   As a proximate and reasonably foreseeable result of the actions of

10    Defendant Lindros, Ms. Gonzalez suffered injuries, including pain and suffering,

11    humiliation, and emotional harm.

12    97.   The actions of Defendant Lindros and the harm suffered by Ms.

13    Gonzalez would likely deter a person of ordinary firmness from exercising his or

14    her First Amendment right to freedom of speech in the future.

15    98.   The deprivation of Plaintiff's constitutional interests was not justified

16    by a sufficient purpose in that no lawful purpose is advanced when an ICE detainer

17    is placed on a United States citizen or a pretrial detainee under no sentence,

18    conviction, and not otherwise subject to a lawful detainer.

1
**JURY DEMAND**

2       Pursuant to Federal Rule of Civil Procedure 38(b), Ms. Gonzalez demands a

3   trial by jury as to all issues so triable.

4
**PRAYER FOR RELIEF**

5       WHEREFORE, Plaintiff Ms. Gonzalez respectfully requests that the Court
6   enter judgment:

7       A.    Awarding compensatory damages to Ms. Gonzalez against

8   Defendants for violating Ms. Gonzalez's rights under the U.S. Constitution by

9   referring her to ICE for questioning and subsequently arresting, detaining, and

10  transferring Ms. Gonzalez into ICE custody based solely on an immigration

11  detainer, and in excess of Defendants' warrantless arrest authority under federal

12  and state law;

13      B.    Awarding compensatory and punitive damages to Ms. Gonzalez

14  against Defendant Lindros for violating Ms. Gonzalez's rights under the U.S.

15  Constitution by retaliating against her for her for her exercise of her First

16  Amendment right to freedom of speech;

17      C.    Awarding prejudgment interest to Ms. Gonzalez on any award of

18  damages to the extent permitted by law;

19      D.    Awarding reasonable attorneys' fees and costs to Ms. Gonzalez

20  pursuant to 42 U.S.C. § 1988 and/or any other provisions of law or applicable

21  common-law provisions; and

1      E.      Granting such other relief as they Court may deem just and proper

2   under the circumstances.

Dated: March 7, 2017

By:   <u>s/ Ray A. Ybarra Maldonado   </u>
Ray A. Ybarra Maldonado
Ariz. Bar # 027076
LAW OFFICE OF RAY A. YBARRA
MALDONADO, PLC
2701 East Thomas Road, Suite A
Phoenix, Arizona 85016
Telephone: (602) 910-4040
Facsimile: (602) 910-4444
ray@abogadoray.com

Mark Fleming*
NY Bar # 4487534
NATIONAL IMMIGRANT JUSTICE
CENTER
208 South LaSalle Street, Suite 1300
Chicago, Illinois 60604
Telephone: (312) 660-1628
Facsimile: (312) 660-1505
mfleming@heartlandalliance.org

Matthew J. Piers*
José J. Behar*
Chirag G. Badlani*
HUGHES SOCOL PIERS RESNICK &
DYM, LTD.
70 West Madison Street, Suite 4000
Chicago, IL 60657
Telephone:  (312) 580-0100
Facsimile: (312) 604-2777
mpiers@hsplegal.com
jbehar@hsplegal.com
cbadlani@hsplegal.com

R. Andrew Free*

LAW OFFICE OF R. ANDREW FREE
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959
andrew@immigrantcivilrights.com

*Attorneys for Plaintiff*

*\*Admitted pro hac vice*