ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona
ELIZABETH K. SICHI
Assistant U.S. Attorney
Illinois State Bar No. 6271368
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona  85004-4408
Telephone:  (602) 514-7500
Facsimile:  (602) 514-7760
E-Mail: Elizabeth.sichi@usdoj.gov
*Attorneys for Defendant ICE Officer Lindros*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Jacinta Gonzalez-Goodman,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Paul Penzone, et al.,<br><br>　　　　　Defendants. | **Case No. CV 16-4388-PHX-JJT (MHB)**<br><br>**DEFENDANT ICE OFFICER LINDROS' MOTION TO DISMISS COUNTS V – VIII OF PLAINTIFF'S AMENDED COMPLAINT** |

Defendant U.S. Immigration and Customs Enforcement Officer Gabriel Lindros moves to dismiss Plaintiff Jacinta Gonzalez-Goodman's claims against him on the following grounds: (1) Counts V and VIII should be dismissed because the Court should not create a *Bivens* cause of action for a U.S. citizen who is detained after refusing to disclose her citizenship; (2) Count V should also be dismissed because Fourth Amendment criminal procedural safeguards do not apply to civil immigration matters, and a *Bivens* action against an individual officer is not a proper vehicle for altering immigration law and policy; (3) Plaintiff admits that the detainer was never served on her; therefore, Officer Lindros is not liable for damages during her detention while in the custody of the Maricopa County Sheriff's Office ("MCSO"); (4) Count VI should be dismissed because Plaintiff fails to state a claim for an equal protection violation; (5) Count VII should be dismissed because Plaintiff fails to state a claim for substantive and procedural due process violations; (6) Count VIII

should also be dismissed because Plaintiff fails to state a First Amendment retaliation claim; and (7) Officer Lindros is shielded from each of Plaintiff's claims in Counts V through VIII by qualified immunity. In support of this motion, Defendant submits the following memorandum of points and authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND BACKGROUND

On Saturday, March 19, 2016, Plaintiff and two other protesters were arrested by MCSO officers for blocking a highway during a Donald Trump campaign rally. Amended Complaint, Doc. 15, at ¶37. All three were taken to the Maricopa County 4th Avenue Jail for routine processing. *Id.* at ¶38. Plaintiff told MCSO officials that she was born in Mexico and presented them with a valid, unexpired Louisiana driver's license. *Id.* at ¶39. Plaintiff alleges that after her booking, she was "singled out by County Defendants for follow-up questioning by Defendant Lindros," a deportation officer with U.S. Immigration and Customs Enforcement ("ICE"). *Id.* at ¶¶40, 19. Plaintiff alleges that she provided Officer Lindros with her full name, date of birth, and "other biographical information." *Id.* at ¶43.

However, nowhere in Plaintiff's Amended Complaint does she state that she ever informed Officer Lindros that she was a U.S. citizen, provided him with her Social Security number, or informed him that she had a U.S. passport. *See* Doc. 15. It is undisputed that Plaintiff instead refused to answer any of Officer Lindros' questions about her citizenship, citing her right to remain silent and to have an attorney[1]. *Id.* at ¶44. Plaintiff alleges that Officer Lindros responded by calling her a "pain-in-the-ass illegal" and issuing an ICE detainer for her. *Id.* at ¶45; Doc. 18, Exhibit J. The detainer requested that MCSO serve a copy of the detainer on Plaintiff and maintain custody of her for a period not to exceed 48

---

[1] Notably, none of these rights exists in the civil immigration context. *See INS v. Lopez-Mendoza,* 468 U.S. 1032, 1043-44 (1984)(no Fifth Amendment right against self-incrimination); *United States v. Alderte-Deras*, 743 F.2d 645, 647 (9th Cir. 1984)(same); *United States v. Peralta-Sanchez*, 847 F.3d 1124, 1132 (9th Cir. 2017) quoting *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004) (no Sixth Amendment right to counsel).

hours. *Id.* Plaintiff alleges that she was never served with the detainer. Doc. 15 at ¶53. Although an Arizona state court judge ordered that she be released on the evening of March 19, 2016 (*id.* at ¶51; Doc. 18, Exhibit L, indicating time of order as 8 p.m.), she was detained at the 4th Avenue Jail overnight. *Id.* at ¶¶52, 55.  The next morning, Plaintiff was transported to an ICE facility.  *Id.* at ¶56.  Plaintiff alleges she was released after ICE officials ascertained that she was a U.S. citizen. *Id.* at ¶ 57.  In addition to claims against the County Defendants, Plaintiff brings a *Bivens* action against Officer Lindros in his personal capacity for violation of her Fourth Amendment, Equal Protection, Due Process, and First Amendment Rights. *See* Doc. 15 at Counts V – VIII.

## II.  ARGUMENT

### A.  Legal Standard.

#### 1.  Federal Rule of Civil Procedure 12(b)(6).

The Court may dismiss a complaint under Rule 12(b)(6) as a matter of law for "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). Generally, when resolving a Rule 12(b)(6) motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party." *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997).  "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (citations omitted).

#### 2.  The Two-Part Qualified Immunity Analysis

A federal officer has complete immunity from a *Bivens* suit under the "qualified immunity" doctrine unless his conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817-818 (1982). The Supreme Court's two-part inquiry for

qualified immunity asks: (1) whether "the facts alleged show the officer's conduct violated a constitutional right" and (2) "whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). These questions can be addressed in any order. *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1075 (9th Cir. 2011); *Chism v. Washington State*, 661 F.3d 380, 386 (9th Cir. 2011).

The plaintiff bears the burden of showing that the right at issue was clearly established. *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011). To carry this burden, the plaintiff must show that the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that "*every* 'reasonable official would have understood that what he [was] doing violates that right.'" *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011) (emphasis added), *quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987). It follows that immunity is appropriate as long as *any* reasonable officer "could have believed [his actions] to be lawful, in light of clearly established law. . . ." *Anderson*, 483 U.S. at 641. Immunity is proper even if an officer is reasonably mistaken about the lawfulness of his action. *Saucier*, 533 U.S. at 205.

The second step of the qualified immunity analysis therefore pertains in a more specific, "particularized" sense: immunity must be afforded unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202, citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999). "[I]f officers of reasonable competence could disagree on [the] issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *accord al-Kidd*, 131 S.Ct. at 2803 ("existing precedent must have placed the . . . constitutional question beyond debate.") Properly applied, the qualified immunity doctrine "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341.

**B.   The Court Should Dismiss Count V of Plaintiff's Amended Complaint Alleging Fourth Amendment Violations.**

   **1.   The Court Should Not Create a *Bivens* Cause of Action for Wrongful Detention of a U.S. Citizen Who Refuses to Disclose Her Citizenship.**

In *Ziglar v. Abbasi*, the Supreme Court set forth a revised test for determining whether a *Bivens* claim can be brought in federal court. Nos. 15-1358, 1501359, 15-1363__ S.Ct. __, 2017 WL 2621317, *2-3 (June 19, 2017). Recognizing that in the last three decades, the Court has "adopted a far more cautious course" in "deciding whether to recognize an implied course of action," the Court determined that "[i]f a statute does not evince Congress' intent 'to create the private right of action asserted,' no such action will be created through judicial mandate." *Id.* (citation omitted).

Now, under *Abbasi*, "[t]he proper test for determining whether a claim arises in a new *Bivens* context is" (1)"[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court," and (2) whether "special factors . . . indicate that Congress, not the courts, should decide whether a damages action should be allowed." 2017 WL 2621317 at *2-3.  Here, Plaintiff is asserting a new *Bivens* theory of liability not previously recognized by the Supreme Court:  may a U.S. citizen who refuses to disclose her citizenship and is briefly detained by local authorities at the request of an immigration officer bring a Fourth Amendment *Bivens* claim against that immigration officer? Thus, the Court must determine whether special factors indicate that the legislative, rather than the judicial branch, should decide whether to allow her to bring a *Bivens* claim.

In this case, Plaintiff's deliberate refusal to disclose her U.S. citizenship (doc. 15 at ¶44) counsels against implying a *Bivens* cause of action in the absence of Congressional action.  The present case is similar to *Turner v. United States*, 2013 WL 5877358, *2 (S.D. Tex. Oct. 31, 2013). There, the plaintiff was a U.S. citizen who gave a false name to immigration officials, was detained and was placed into removal proceedings. *Id.*  The court noted that she failed to allege anywhere in her 22-page complaint that she ever disclosed her real name to the individual defendants against whom she sought relief under *Bivens*. *Id.* at *9.  The court dismissed the case, holding that "[w]here, as in this case, a United States citizen fails to provide her real name and instead provides a false name to immigration authorities, and as a result is detained and deported as a removable alien, there can be no *Bivens* claim against the immigration officers." *Id.*  In discussing special factors, the court

noted not only the risk of dissuading individuals from becoming immigration officers, but the danger that "fashioning a *Bivens* remedy here might incentivize others to provide false identities to immigration officers with the hope of either recovering damages or otherwise stymying their removal proceedings." *Id.* at *10.

In the present case, as in *Turner*, Plaintiff clearly knew that she was a U.S. citizen. However, as in *Turner*, she refused to disclose her citizenship. *See* Doc. 15 at ¶44. The Court should not reward her with a chance to obtain compensation for circumstances created of her own volition. To do so would only create a financial incentive for others to engage in similar conduct, impeding the enforcement of immigration laws and discouraging officers such as Gabriel Lindros from performing their duties. *See Abbasi*, 2017 WL 2621317 at *20 ("If *Bivens* liability were to be imposed, high officers who face personal liability for damages might refrain from taking urgent and lawful action in a time of crisis. And, as already noted, the costs and difficulties of later litigation might intrude upon and interfere with the proper exercise of their office.")  Hesitation in implying such a cause of action is further warranted as immigration issues may implicate "diplomacy, foreign policy, and the security of the nation." *Mirmehdi v. United States*, 689 F.3d 975, 982 (9th Cir. 2012); *see also Abbasi*, 2017 WL 2621317, *3 (noting that "[n]ational-security policy . . . is the prerogative of Congress and the President.")

Additionally, there is "[a]n alternative remedial structure [that] may also limit the Judiciary's power to infer a new *Bivens* cause of action." *Id.* at *2. The Immigration and Nationality Act ("INA") and the regulations enacted in furtherance of it are the "comprehensive federal statutory scheme for regulation of immigration and naturalization." *DeCanas v. Bica*, 424 U.S. 351, 353 (1976). The creation of a deliberately crafted statutory and regulatory scheme, even if imperfect, precludes creation of a private right of action for damages. *See, e.g., Schweiker v. Chilicky*, 487 U.S. 412, 429 (1988) (declining to infer a *Bivens* remedy because, despite the shortcomings of the Social Security Disability Act, Congress "is the body charged with making the compromises required in the design of a massive and complex welfare benefits program.") That the INA does not provide for

monetary relief cannot be considered an oversight by Congress, "given that despite multiple changes to the structure of appellate review in the Immigration and Nationality Act, Congress never created such a remedy." *Mirmehdi*, 689 F.3d at 982.

In the present case, in addition to her opportunity to speak with Officer Lindros at the 4th Avenue Jail, INA regulations would have afforded Plaintiff further opportunities to avoid detention and/or obtain release based on her citizenship. Once ICE takes physical custody of an individual on whom it has placed a detainer, an ICE officer processes the individual and determines (1) whether to issue a charging document, known as a Notice to Appear, placing the individual into removal proceedings, and (2) whether to keep the person in custody or permit release on bond, other conditions, or recognizance.  8 U.S.C. §1357(a)(2) and 8 C.F.R. §287.3. This process requires the review of a supervisory officer, providing an additional level of review of the individual's alienage and removability.  *See* 8 C.F.R. §§239.1(a); 236.1(a)(8).  If, upon supervisory review, Plaintiff had been found removable, she would have been entitled to a multi-level judicial review of her citizenship claim, had she asserted it. *See, e.g., Mondaca-Vega v. Lynch*, 808 F.3d 413, 418-419 (9th Cir. 2015)(describing same).  Therefore, based on Congress's heavy regulation of immigration and its silence as to a private right of action for damages, the Court should decline to imply such a remedy.

> **2. The Court Should Dismiss ¶¶83(a), (b), (c) and (e) of the Amended Complaint as Plaintiff's Challenges to the Validity of Her Civil Immigration Based on Fourth Amendment Criminal Procedure Fail to State a Claim and Because Plaintiff Pleads Herself Out of a Cause of Action Against Officer Lindros For the Time She was in the Custody of Local Officials.**

*Bivens* remedies "have never [been] considered a proper vehicle for altering an entity's policy." *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001).  Thus, a plaintiff, by pleading artifice, should not be able to evade the Supreme Court's clear holding that special factors preclude *Bivens* suits against agencies to challenge agency policies. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1993) ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself."). Yet, that is exactly what Plaintiff seeks to do here. She is asking the Court create a *Bivens* remedy and to

impose, without any legal precedent, Fourth Amendment criminal procedures to civil immigration detainers.[2]

A civil immigration detainer is not a seizure. *See, e.g.*, *Galarza v. Szalczyk*, 745 F.3d 634, 643 (3d Cir. 2014) ("[S]ettled constitutional law clearly establishes that [immigration detainers] must be deemed requests" because any other interpretation would render them unconstitutional under the Tenth Amendment). Moreover, an immigration detainer does not place a person in federal custody; the person remains in local custody until ICE takes some further action. *Campos v. INS*, 62 F.3d 311, 314 (9th Cir. 1995). Detainers merely provide notice of the U.S. Department of Homeland Security's ("DHS") intent to assume custody of a removable alien detained in the custody of another law enforcement agency. 8 C.F.R. § 287.7(a). Furthermore, these requests are only temporary. *See* 8 C.F.R. § 287.7(d)(a "[t]emporary detention at Department request" is limited for a period "not to exceed 48 hours" excluding weekends and federal holidays).

Fourth Amendment criminal procedural requirements simply do not apply to civil immigration detainers. *See Gerstein v. Pugh*, 420 U.S. 103, 125, n. 27 (1975). "The Fourth Amendment was explicitly tailored for the criminal justice system. . . . Moreover, the Fourth Amendment probable cause determination is in fact only the first stage of an elaborate system, unique in jurisprudence, designed to safeguard the rights of those accused of criminal conduct. . . . [C]ivil procedures . . . are inapposite and irrelevant in the wholly different context of the criminal justice system); *Rhoden v. United States*, 55 F.3d 428, 432, n.7 (1995)(distinguishing the Fourth Amendment analysis for detention "[i]n the context of a

---

[2] Plaintiff alleges that the detainer Officer Lindros issued was invalid because it "did not include, and was not accompanied by a warrant," (Doc. 15 at ¶83(a)), was not supported by a "sworn declaration or recitation of specific facts providing probable cause," (*id.* at ¶83(b)), and did not "otherwise contain a determination of probable cause by a detached and neutral judicial officer. . . ." *Id.* at ¶83(a). Moreover, she claims that it "purported to authorize 48 hours of detention and transfer to ICE custody without a prompt probable cause hearing." *Id.* at ¶83(c). These are challenges to the detainer itself, rather than the conduct of Officer Lindros. However, the purpose of *Bivens* is to deter the officer. *See Carlson v. Green*, 446 U.S. 14, 21 (1980).

criminal arrest" from the analysis involved for civil immigration detentions)(citations omitted)).

Thus, Plaintiff's allegations in ¶¶83(a)-(c) should be dismissed for failure to state a claim as a matter of law.[3] *See Reno v. Flores*, 507 U.S. 292, 309-310 (1993)(reversing *en banc* decision applying *Gerstin* to immigration proceedings); *Abel v. United States*, 362 U.S. 217, 233 (1960)(rejecting a claim that defendant's arrest, incidental search and weeks-long immigration detention was invalid because it was never sanctioned by a neutral magistrate); *Duncan Roy, et al. v. County of Los Angeles, et al.*, CV12-09012-BRO, CV 13-04416-BRO, 2017 WL 2559616, *10 (C.D. Calif. June 12, 2017)("the Court must follow the precedent finding that the Fourth Amendment does not require judicial review of ICE officers' probable cause determinations").

### 3. Plaintiff Pleads Herself Out of a Claim for the Time She Was Detained in the 4th Avenue Jail.

In paragraph 83(e), Plaintiff pleads herself out of a Fourth Amendment claim against Officer Lindros for the period of time she was detained in the 4th Avenue Jail by alleging that the detainer was never served on her; therefore, it never took effect. *See* Doc. 15 at ¶53 ("... MCSO never served the detainer on Ms. Gonzalez, as required for the detention request to 'take effect.'"). Thus, Plaintiff's detention during her time in the 4th Avenue Jail was at the behest of MCSO, not Officer Lindros. Indeed, the detainer, which is addressed to the Maricopa County Jail, requests that it:

> • Serve a copy of this form on the subject and maintain custody of him/her for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from your custody to allow DHS to assume custody. **This request takes effect only if you serve a copy of this form on the subject, and it does not request or authorize that you hold the subject beyond 48 hours. This request arises from DHS authorities and should not impact decisions about the subject's bail, rehabilitation,**

---
[3] Even if Plaintiff's arrest were subject to *Gerstein*, there is no legal requirement that Plaintiff was entitled to a probable cause hearing in less than 48 hours. A probable cause hearing is only required when there will be "extended restraint of liberty following arrest." *Gerstein*, 420 U.S. at 114; *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991)(declining to require *Gerstein* hearings within less than 48 hours).

**parole, release, diversion, custody classification, work, quarter assignments, or other matters.**

*See* Detainer, attached as to Doc. 18, Exhibit J.

The mere issuance of a detainer does not give rise to a constitutional claim. *Royer v. INS.*, 730 F. Supp. 588, 590 (S.D.N.Y. 1990). Consequently, Officer Lindros is not liable for any period of detention prior to Plaintiff's transfer to an ICE facility on the morning of March 20, 2016, when she was quickly released. *See* Doc. 15 at ¶¶56-57.

### 4. Qualified Immunity Shields Officer Lindros From Plaintiff's Fourth Amendment Claims.

The Court should dismiss Plaintiff's allegations in paragraphs 83(a), (b) and (c) because on March 19, 2016, there were no cases holding that civil immigration detainers must be accompanied by warrants supported by a detailed, supportive declarations, that they be issued by neutral magistrates, or that detainees be given probable cause hearings within 48 hours of the request to detain them. *See, e.g., Duncan Roy*, 2017 WL 2559616 at *10 (reviewing cases and finding that no court has held that a probable cause determination is delegated to an immigration, magistrate or federal district court judge rather than to an executive officer such as an ICE agent).

Furthermore, detention by a law enforcement officer is consistent with the Fourth Amendment if it is supported by probable cause. *See Beck v. Ohio,* 379 U.S. 89, 90 (1964). An officer is entitled to qualified immunity if there is at least arguable probable cause. *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011). Arguable probable cause may exist even where an officer is mistaken, so long as the mistake is objectively reasonable. *Id.* at 1078.

Courts have held that an individual born abroad is presumed to be an alien and bears the burden of rebutting that presumption. *See Lopez-Mendoza*, 68 U.S. at 1043-44 (quoting *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-54 (1923)("Silence is often evidence of the most persuasive character . . . [T]here is no rule of law which prohibits officers charged with the administration of the immigration law from drawing an inference from the silence of one who is called upon to speak . . . . A person arrested on the preliminary

warrant is not protected by a presumption of citizenship comparable to the presumption of innocence in a criminal case. There is no provision which forbids drawing an adverse inference from the fact of standing mute.")

Nowhere in her 98-paragraph Amended Complaint does Plaintiff allege that she ever disclosed her U.S. citizenship to Officer Lindros. *See* Doc. 15. Indeed, she alleged that when Officer Lindros attempted to ask her about her citizenship, she refused to answer. *See id.* at ¶¶43-44. Although Plaintiff claims that Officer Lindros knew that she was a citizen because she possessed a valid Louisiana driver's license requiring proof of citizenship, she does not allege that she or MCSO ever provided the driver's license to Officer Lindros. *Id.* at ¶82. In any case, an officer is not required to accept a driver's license as proof of citizenship. *See U.S. v. Kisgyorgy*, 5:09-CR-81, 2010 WL 3323675, *9 (D. Vt. April 23, 2010)("Agent Ross was not compelled to accept the Defendant's driver's license as proof of citizenship and was entitled to detain the Defendant to confirm whether the Defendant's claim that he was a naturalized citizen."); *see also Marquez v. Kiley,* 436 F. Supp. 100, 108 (S.D.N.Y. 1977)(immigration officers not required to accept green card as proof of legal residency).

Although he was ultimately mistaken, Officer Lindros had arguable probable cause at the time he issued the detainer based on Plaintiff's foreign birth and his refusal to answer questions about her citizenship. The present case is similar to *Mendoza v. ICE*, 849 F.3d 408 (8th Cir. 2017). There, an ICE agent issued a detainer to a U.S. citizen who admitted that he was born in Mexico but, like Plaintiff, did not disclose his citizenship to the agent, who had conflicting information about his identity. *Id.* at 412. As here, the detainer was issued over the weekend and was of brief duration, lasting only until Mendoza's citizenship could be confirmed. *Id.* at 415. The Eighth Circuit held that the agent had qualified immunity based on arguable probable cause. *Id.* at 418-419. *See also Ortega v. Cloyd*, 2012 WL 5835519, *4 (W.D. Ky. Nov. 16, 2012), *aff'd*, 737 F.3d 435 (6th Cir. 2013)("An ICE agent could reasonably but erroneously issue a detainer for a U.S. citizen if there is an error in its database or if the individual's name is similar to someone else who is in the database. As alleged, the illegal alien and Ortega had very similar names and birth dates. It is entirely

plausible that ICE Agent Cloyd was unaware that he was issuing an unlawful detainer and thus could have not known that he violated Ortega's "clearly established" right."). Consequently, Officer Lindros is entitled to qualified immunity, and the Court should dismiss Count V of Plaintiff's Amended Complaint.

### C. The Court Should Dismiss Count VI of Plaintiff's Amended Complaint Based on Equal Protection.

#### 1. Plaintiff Fails to Sufficiently Allege An Equal Protection Violation.

Plaintiff's claim in Count VI that Officer Lindros issued a detainer against her based on her place of birth and Hispanic ethnicity in violation of the equal protection clause should be dismissed for failure to state a claim. At most, Plaintiff alleges that Officer Lindros called her "a pain in the ass illegal"; however, such comment does not reference her ethnicity or her national origin. *Id.* at ¶45. Plaintiff does not allege that Officer Lindros treated her differently than anyone else referred to him by the MCSO or that he considered her Hispanic ethnicity when he issued the detainer. *Id.* at ¶¶85-88. The Court cannot presume that, absent other evidence, Hispanic appearance and surname were grounds for Plaintiff's detention. *See Garcia-Garcia v. Holder*, 550 Fed. Appx. 523, 524 (9th Cir. 2013) (rejecting such argument as a matter of law).

Moreover, Plaintiff cannot base a *Bivens* equal protection claim against Officer Lindros based on the conduct of other, unidentified employees of ICE and/or MCSO.[4] A *Bivens* claim may only be made against an officer in his individual capacity for his individual actions. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Pellegrino v. United States,* 73 F.3d 934, 936 (9th Cir.1996) (Liability under *Bivens* must be based on the personal involvement of the defendant). Plaintiff's allegations do not satisfy the standard in *Iqbal* and must be dismissed. *See Nasious v. Two Unknown B.I.C.E. Agents at Arapahoe Cnty. Justice*

---

[4] *See* Doc. 15 at ¶40 ("After MCSO completed its initial booking of all three protesters, Ms. Gonzalez was singled out by County Defendants for follow-up questioning by Defendant Lindros, the ICE officer stationed in the jail. The other two non-Hispanic protesters were not questioned by *ICE*.")(emphasis added).

- 12 -

*Ctr.*, 657 F. Supp. 2d 1218, 1231-32 (D. Colo. 2009), *aff'd sub nom. Nasious v. Two Unknown B.I.C.E. Agents*, 366 F. App'x 894 (10th Cir. 2010) (holding that defendant did not violate equal protection rights where plaintiff relied on cursory conclusions and did not demonstrate that people who were similarly situated were treated differently).

### 2. Officer Lindros has Qualified Immunity from Plaintiff's Equal Protection Claim.

Even if Plaintiff could state an equal protection claim against Officer Lindros, he is shielded by qualified immunity because there is no clearly established law that birthplace cannot be used to establish probable cause for an immigration detainer. *See Turkmen v. Ashcroft*, 589 F.3d 542, 550 (2d Cir. 2009)(granting qualified immunity because it was not clearly established that there is no equal protection right to be free of selective enforcement of the immigration laws based on national origin). While Hispanic appearance cannot be considered a relevant factor to determine probable cause of alienage or removability, *see Ortega-Melendres v. Arpaio*, 836 F. Supp.2d 959, 972 (D. Ariz. 2011), it is permissible for an immigration officer to investigate a person's immigration status based on the fact that she was born outside the United States. The Ninth Circuit has held that foreign birth "gives rise to a rebuttable presumption of alienage." *Scales v. INS*, 232 F.3d at 1163. Because Plaintiff was born in Mexico (Doc. 15 at ¶39), she was automatically granted Mexican citizenship, which was "presumed to have continued" absent evidence to the contrary. *Hauenstein v. Lynham*, 100 U.S. 483, 484 (1879). Plaintiff's admission of foreign birth satisfies the burden of proof to establish alienage. *See Tejeda-Mata v. INS*, 626 F.2d 721, 724-725 (9th Cir. 1980)(finding that once alienage is established by admission of foreign birth, the burden of proof shifts to the alien). Consequently, a reasonable immigration officer would not have understood that issuing a detainer based on Plaintiff's foreign birthplace and refusal to answer questions about her citizenship would violate her procedural due process rights, and the Court should dismiss Count VI of Plaintiff's Amended Complaint.

### D. The Court Should Dismiss Count VII of Plaintiff's Amended Complaint Alleging Due Process Violations Under the Fifth Amendment.

Case 2:16-cv-04388-JJT-MHB   Document 38   Filed 07/13/17   Page 14 of 18

### 1. Plaintiff's Fifth Amendment Substantive Due Process Claim is Properly Analyzed Under the Fourth Amendment.

To sustain a substantive due process claim under the Fifth Amendment, a plaintiff must allege facts demonstrating a deprivation of "life, liberty or property in such a way that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). Plaintiff claims that Officer Lindros violated her due process rights by issuing a detainer on "less than probable cause." Doc 15 at ¶91(a). The Fourth Amendment governs pretrial detention, not the Fifth Amendment's due process clause. *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 919 (2017). Thus, the Fourth Amendment, and not the more generalized notion of substantive due process, must be the exclusive guide for analyzing her claim. *Albright v. Oliver*, 510 U.S. 266, 273 (1994); *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).

### 2. Plaintiff Fails to State a Claim for a Procedural Due Process Violation, From Which Officer Lindros Would Have Qualified Immunity.

Plaintiff's allegation in paragraph 91(b) fails to state a procedural due process claim as a matter of law. The federal statute and regulations authorizing immigration detainers do not provide the subject of a detainer with a right to notice or an opportunity to be heard before a detainer is issued or enforced. *See* 8 U.S.C. §§ 1103, 1357; 8 C.F.R. § 287.7; *see also Campos,* 62 F.3d at 313-314 (a detainer is a notification that a removal decision will be made at some future date); *Camarena v. Slade*, 107 Fed. Appx. 821, 822 (9th Cir. 2004)(holding INS detainer did not place prisoner in INS custody). *Cf.* 8 U.S.C. §1534 (setting forth the procedural safeguards in removal hearings). Plaintiff does not allege that Officer Lindros ever initiated removal proceedings against her; thus, the very brief period during which ICE continued her detention at its facility while it determined her citizenship did not amount to a deprivation sufficient to give rise to a cause of action. *See Ortega v. U.S. ICE*, 737 F.3d 435, 438 (6th Cir. 2013)(explaining the process of detainers and "why in the normal course they do not violate [Due Process and Fourth Amendment] constitutional guarantees.").

Moreover, Officer Lindros is entitled to qualified immunity as an alleged right to a pre-detainer right to notice or a hearing were not clearly established on March 19, 2016.

- 14 -

There is no provision in the regulations for notice and an opportunity to be heard before the issuance of a detainer. *See* 8 C.F.R. § 287.7. Nor are there any cases so holding. *See, e.g., Duc v. United States*, CV 14-1273SS, 2014 WL 4273252, *1-2 (C.D. Calif. Aug. 28, 2014 (rejecting petitioner's argument that his interview with an ICE officer violated his procedural due process rights because the officer "rushed through the interview" based on lack of jurisdiction); *see also Duncan Roy*, 2017 WL 2559616 at *10 (no cases requiring review of detainer by neutral magistrate). Furthermore, a reasonable ICE officer such as Officer Lindros would not have understood that issuing a detainer without prior notice or an opportunity to be heard would violate Plaintiff's procedural due process rights. Therefore, the Court should dismiss Count VII of Plaintiff's Amended Complaint in its entirety.

### E. The Court Dismiss Count Should Dismiss Count VIII of Plaintiff's Amended Complaint.

#### 1. A *Bivens* Remedy Should Not be Inferred for U.S. Citizens Who Refuse to Disclose Their Citizenship.

The Supreme Court has never recognized any First Amendment *Bivens* cause of action. *Reichle v. Howards*, 132 S.Ct. 2088, 2093 n.4 (2012)("We have never held that Bivens extends to First Amendment claims."); *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (citation omitted)(noting Court has affirmatively "declined to extend *Bivens* to a claim sounding in the First Amendment" and suggesting it could "dispose[] of" such claims based on the lack of a *Bivens* remedy.") Nor has the Supreme Court recognized Plaintiff's novel allegation of First Amendment retaliation based on assertion of a Fifth Amendment right against self-incrimination in a civil immigration context. As previously noted, there is no such right in civil immigration proceedings. *See Lopez-Mendoza,* 468 U.S. at 1043-44; *Alderte-Deras*, 743 F.2d at 647.

Special factors weigh against creating new First Amendment *Bivens* cause of action based on a U.S. citizen's refusal to disclose her citizenship to an immigration officer. Under such theory of liability, a plaintiff can set up a First Amendment retaliation claim each time she is arrested merely by selectively disclosing information. The Court should decline Plaintiff's invitation to so expand the scope of retaliation claims as it would provide a

financial incentive to engage such conduct and discourage immigration officials from enforcing the law. *Turner*, 2013 WL 5877358 at *10; *Abbasi*, 2017 WL 2621317 at *20.

Furthermore, recognizing a First Amendment retaliation claim predicated on a Fifth Amendment right against self-incrimination to the civil immigration context, would, in the absence of any legislation, significantly alter the INA and affect both immigration enforcement and proceedings in immigration courts. The Court should hesitate to interfere with Congress's plenary power over immigration matters and the Executive Branch's enforcement of the law by creating such a *Bivens* remedy. *See, e.g.*, *Mirmehdi*, 689 F.3d at 982.

### 2. Plaintiff Fails to State a First Amendment Retaliation Claim.

A First Amendment retaliation claim requires: (1) adverse action (2) because of (3) protected conduct, which (4) chilled the exercise of First Amendment rights (5) without advancing a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-568 (9th Cir. 2005). Here, Plaintiff was not subjected to an adverse action because the issuance of a detainer was not a seizure. *See Galarza*, 745 F.3d at 643. Moreover, she did not engage in any "protected conduct" because there is no Fifth Amendment right against self-incrimination in civil immigration proceedings. *See Lopez-Mendoza*, 468 U.S. at 1043-44 *Alderte-Deras*, 743 F.2d at 647. Furthermore, to the extent that Plaintiff claims that the detainer "chilled" her exercise of First Amendment rights, she admits that she spoke to a reporter and was featured in a news article shortly after her release. *See* Doc. 18, Exhibit F. Finally, Officer Lindros was carrying out his mission of investigating and detaining persons in the United States illegally, which he was authorized to do pursuant to 8 U.S.C. §1357 and 8 C.F.R. §287.7.

### 3.    Officer Lindros is Entitled to Qualified Immunity from Plaintiff's First Amendment Retaliation Claim.

Finally, there was no clearly established law on March 19, 2016, that refusing to speak to an immigration officer is specifically protected by the First Amendment. Several courts have found that there is "no consensus that a defendant has a First Amendment right

not to answer an officer's questions." *See Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017)("It is instructive that Alexander points to no case supporting the contention that there is a clearly established First Amendment right not to answer an officer's questions during a traffic stop.  We therefore conclude that the officers are entitled to qualified immunity on Alexander's First Amendment retaliation claim."); *Koch v. City of Del City*, 660 F.3d 1228, 1244 (10th Cir. 2011)("[I]t was not clearly established that an individual has a First Amendment right to refuse to answer an officer's questions during a *Terry* stop."); *Fields v. Lashbrook*, 2016 WL 3124839, at *4 (S.D. Ill. June 3, 2016)("[T]he right to remain silent during a prison investigation, where an inmate's Fifth Amendment right to silence is not at issue, was not clearly established" in 2013).

Therefore, a reasonable officer, upon hearing Plaintiff invoke her right to remain silent, would not have understood that she was invoking a First Amendment right against compelled speech. Further, a reasonable officer would not have understood that Plaintiff was invoking an underlying, unrecognized Fifth Amendment right against self-incrimination in a civil immigration matter. *See Lopez-Mendoza*, 468 U.S. at 1043-44 *Alderte-Deras*, 743 F.2d at 647. Under these circumstances, Officer Lindros is entitled to qualified immunity, and the Court should dismiss Count VIII of Plaintiff's Amended Complaint.

WHEREFORE, for all of the foregoing reasons, Officer Lindros respectfully requests that this Honorable Court dismiss Counts V through VIII of Plaintiff's Amended Complaint with prejudice.

Respectfully submitted this 13th day of July, 2017.

> ELIZABETH A. STRANGE
> Acting United States Attorney
> District of Arizona
>
> *s/Elizabeth K. Sichi*
> Elizabeth K. Sichi
> Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Ray A. Ybarra Maldonado
LAW OFFICE OF RAY A. YBARRA MALDONADO, PLC
2702 East Thomas Road, Suite A
Phoenix, Arizona 85016

Mark Fleming
National Immigrant Justice Center
208 South LaSalle Street, Suite 1300
Chicago, Illinois 60604

Matthew J. Piers
Jose J. Behar
Chirag G. Badlani
HUGHES SOCOL PIERS RESNICK & DYM LTD
70 West Madison Street, Suite 4000
Chicago, Illinois 60657

R. Andrew Free
LAW OFFICES OF R. ANDREW FREE
P. O. Box 90568
Nashville, TN 37209
*Attorneys for Plaintiffs*

Ann Thompson Uglietta
MARICOPA COUNTY ATTORNEY'S OFFICE
222 North Central Avenue, Suite 1100
Phoenix, Arizona 85004
*Attorney for Maricopa County Defendants*

*s/ Elizabeth K. Sichi*
U.S. Attorney's Office