ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona
ELIZABETH K. SICHI
Assistant U.S. Attorney
Illinois State Bar No. 6271368
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona  85004-4408
Telephone:  (602) 514-7500
Facsimile:  (602) 514-7760
E-Mail: Elizabeth.sichi@usdoj.gov
*Attorneys for Defendant ICE Officer Lindros*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Jacinta Gonzalez-Goodman,<br><br>Plaintiff,<br><br>v.<br><br>Paul Penzone, et al.,<br><br>Defendants. | **Case No. CV 16-4388-PHX-JJT (MHB)**<br><br>**DEFENDANT ICE OFFICER LINDROS' REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS V – VIII OF PLAINTIFF'S AMENDED COMPLAINT** |

Defendant U.S. Immigration and Customs Enforcement Officer Gabriel Lindros respectfully submits this reply in support of his motion to dismiss Counts V-VIII of Plaintiff's Amended Complaint.

**I.     The Court Should Dismiss Plaintiff's Fourth Amendment Claim as an Unwarranted Extension of *Bivens*, for Failure to State a Claim, and Based on Qualified Immunity.**

**A.    In *Ziglar v. Abbasi*, the Supreme Court Shut the Door to Creating *Bivens* Claims in New Contexts; Thus, the Court Should Dismiss Plaintiff's Fourth Amendment Claim with Prejudice.**

Plaintiff cannot rely on cases prior to the Supreme Court's June 2017 decision in *Ziglar v. Abbasi* 137 S.Ct. 1843 (2017) to re-open the door to a *Bivens* cause of action. *See* Doc. 50 at pp. 5-6. In *Abbasi*, the Court began by noting that it "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." 137 S.Ct. at 1857. Post-*Abbasi,* "[t]he proper test for determining whether a case presents a new *Bivens* context is" whether "the case is different in a meaningful way from previous *Bivens* cases decided by this [the United States Supreme] Court." *Id.* at *1859. "[D]ifferences that are meaningful enough to make a given context a new one" may include "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Id.* at 1859-60.

Plaintiff's allegation that she was wrongfully issued an immigration detainer, despite her refusal to inform the officer that she was a U.S. citizen,[1] has never been recognized by the Supreme Court as giving rise to a *Bivens* cause of action. In *Abbasi*, the Court acknowledged that it had recognized *Bivens* claims in only three contexts: (1) the original Fourth Amendment search and seizure case of *Bivens v. Six Unknown Federal Narcotics Agents*[2]; (2) a Fifth Amendment claim against a Congressman for firing his female secretary on the basis of sex[3]; and (3) an Eighth Amendment claim against prison officials for failure to treat an inmate's asthma, which led to his death.[4] 137 S.Ct. at 1860. The Court also noted that "in light of the

---

[1] Although Plaintiff states that she "truthfully reported" her Louisiana driver's license and possessed a U.S. passport (Doc. 50 at p. 2), nowhere in her Amended Complaint does she allege that she reported her citizenship or provided either of documents to *this* Defendant, Officer Lindros. *See* Doc. 15. Indeed, Plaintiff admits that she refused to answer Officer Lindros' questions about her citizenship. *Id.* at ¶44.

[2] 403 U.S. 388 (1971).

[3] *Davis v. Passman*, 442 U.S. 228 (1979).

[4] *Carlson v. Green*, 446 U.S. 14 (1980).

changes to the Court's general approach to recognizing implied damages remedies, it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." *Id.* at 1856.

There can be no question that this case is distinguishable from the original *Bivens* case, which concerned a Fourth Amendment claim against Federal Bureau of Narcotics agents for handcuffing a man in his home without a warrant. 403 U.S. at 389. The only other Fourth Amendment case on which Plaintiff relies on is a non-binding case from the Northern District of California, *Mendia v. Garcia*. Doc. 50 at p. 6. *Mendia* pre-dates *Abbasi* by more than a year, concerns the amendment of a complaint pending a motion to dismiss, and concerns a citizen in state custody who was allegedly denied bail by a third-party as a result of the detainer. 165 F. Supp. 3d 861,869-872, 877 (N.D. Cal. 2016). This District Court opinion cannot extend *Bivens*. *Abbasi*, 137 S.Ct. at 1859; *contra id.* at *1878 (Breyer, J., dissenting) (looking to courts of appeals cases). As the Court noted in *Abbasi,* "even a modest extension [of *Bivens*] is still an extension." 137 S. Ct. at 1864. Thus, the Court should decline to create a Fourth Amendment *Bivens* cause of action for Plaintiff based on Officer Lindros' issuance of a temporary immigration detainer.

Since, as a threshold matter, Plaintiff has no legal authority to extend *Bivens* to new contexts under the Fourth Amendment, the Court should consider the special factors applicable to her claim. Here, even though Plaintiff refused to disclose her citizenship to Officer Lindros, the alternative remedial structure in the form of the Immigration and Naturalization Act and its regulations, particularly 8 C.F.R. §236(c)(8), providing for multiple levels of review at the ICE detention facility, resulted in her release almost immediately after her arrival. *See* Doc. 15 at ¶¶44, 56-57. Had it been necessary, Plaintiff would have been entitled to a review of her claims in Immigration Court and, if necessary, the U.S. District Court and the Ninth Circuit. *See, e.g.,Mondaca-Vega v. Lynch*, 808 F.3d 413, 418-419 (9th Cir. 2015).

By contrast, in the case to which Plaintiff cites, *Lyttle v. United States*, 867 F. Supp. 2d 1256 (M.D. Ga. 2012)(Doc. 50 at p. 7), the defendants did not raise and the court did not address either pre-immigration hearing regulations and review *or* any subsequent review by

- 2 -

an immigration judge. In *Lyttle*, the plaintiff (who did repeatedly inform agents of his U.S. citizenship and his mental disability) was actually deported. 867 F. Supp. 2d at 1266, 1269-1271. Critically, unlike in the present case, the plaintiff signed a Notice of Intent, falsely acknowledging that he was a Mexican citizen and waiving his legal right to a removal hearing. *Id.* at 2370. This pre-*Abbasi* district court repeatedly emphasized that its opinion was limited to the facts in that case. *See id.* at 1278 ("INA does not provide any meaningful remedy and review procedure . . . *in this case*")(emphasis added); *id.* ("Specifically, the Court holds that a United States citizen with a diminished mental capacity who has been detained without probable cause, who the federal agents know claims to be a United States citizen, whose claim of citizenship is not investigated, whose claim is supported by easily accessible corroborating evidence, and who is manipulated by federal agents through coercion and distortion of record, should have a claim against the responsible agents to recover damages for his injuries caused by his detention and subsequent banishment from the United States").

      The mere fact that Plaintiff claims damages from her short time in ICE custody does not entitle her to monetary compensation through a *Bivens* claim. *See Abbasi*, 137 S.Ct. at 1857-1858; *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1123 (9th Cir. 2009)(declining to imply *Bivens* remedy despite unavailability of monetary damages); *Schweiker v. Chilicky,* 487 U.S. 427, 429 (1988) (same). Nor does alleged intentional wrongdoing give rise to such a claim. *See Lanuza v. Love*, C14-1641, 2015 WL 1282132, *2, 5-6 (W.D. Wash. Mar. 20, 2015)(declining to recognize a *Bivens* cause of action based on ICE officer's intentional forgery). Moreover, Plaintiff can cite to no case where a plaintiff was permitted to seek monetary damages through *Bivens* where she could have easily avoided or challenged her detention. *Cf. Turner v. United States*, 2013 WL 5877358, *6 (S.D. Tex. Oct. 31, 2013). To permit such a claim would open the floodgates to litigation whenever mistake – no matter how caused or how quickly corrected – were made and attempt to slow immigration enforcement either in individual cases (as the *Turner* court predicted, *id.* at *10), or, as in Plaintiff's case, by improperly attempting to challenge the legality of immigration detainers themselves through a *Bivens* cause of action against an individual deportation officer.

Doc. 15 at ¶83. *See FDIC v. Meyer*, 510 U.S. 471, 486 (1993)(special factors preclude *Bivens* suits to challenge agency policies); *Correctional Servs. Corp. v. Maleski,* 534 U.S. 61, 74 (2001)(*Bivens* not a "proper vehicle for altering an entity's policy"); *Carlson v. Green*, 446 U.S. 14, 21 (1980)(purpose of *Bivens* is to deter the *officer*)(emphasis added).  Therefore, special factors counsel hesitation in extending *Bivens* to allow Plaintiff's Fourth Amendment cause of action.

### B. Plaintiff Fails to State a Fourth Amendment Claim Because There is No Legal Authority to Apply Fourth Amendment Criminal Procedural Requirements to Civil Immigration Detainers.

Plaintiff seeks to change immigration law and policy by applying Fourth Amendment criminal procedural requirements to civil immigration detainers.  However, she cannot dispute that immigration detainers are civil in nature.  *See* Doc. 50.  None of the cases Plaintiff cites support her allegations in paragraphs 83(a)-(c) of her Amended Complaint.  Doc. 50 at 10-13. *Morales v. Chadborne*, 793 F.3d 208 (1st Cir. 2015), and *Mendia v. Garcia*, 2016 WL 2654327 (N.D. Calif. May 10, 2016), simply hold that civil immigration detainers must be based on probable cause, which is not at issue in this case.

Nor does Plaintiff examine the language of civil immigration detainers themselves.  *See* Doc. 38 at pp. 9-10; Doc. 18 at Exhibit J, entitled "**Immigration Detainer – Request for Voluntary Action**" (emphasis added). This language makes clear that the detainers are requests to local law enforcement that do not place a person in federal custody.  *Campos v. INS*, 62 F.3d 311, 314 (9th Cir. 1995); *Camarena v. Slade*, 107 F. Appx. 821, 822 (9th Cir. 2004); *Galarza v. Szalczyk*, 745 F.3d 634, 643 (3rd Cir. 2014).  *See also Miranda-Olivares v. Clackamas County*, 2014 WL 1414305 (D. Or. Apr. 11, 2014), cited by Plaintiff (Doc. 50 at p. 9), at *4, §B "**ICE Detainer is Not Mandatory"**)(boldface section heading in original) and at *8 (adopting the reasoning of *Galarza*).

Thus, Plaintiff's reliance on criminal cases (Doc. 50 at pp. 10-11) such as *Gerstein v. Pugh*, 420 U.S. 103 (1975), *United States v. Bueno-Vargas*, 383 F.3d 1104 (9th Cir. 2000), *Shadwick v. City of Tampa*, 407 U.S. 345 (1972) and *Int'l Molders & Allied Workers' Local*

*Union No. 124 v. Nelson*, 674 F. Supp. 294 (N. D. Calif. 1987), are simply misplaced as they involved arrests and workplace raids. *Rhoden c. United States*, a Federal Tort Claims Act case (Doc 50 at p. 13), concerned an arrest of an alien upon re-entry, as opposed to the issuance of a civil immigration detainer. 55 F.3d 428 at 430 (1995). There, the court was careful to distinguish a criminal arrest from a six-day border detention, which the court noted would *not* violate the Fourth Amendment as a matter of law. *Id.* at n. 7.

The case of *Ochoa v. Campbell* (Doc. 50 at p. 13), where the plaintiff sought a temporary restraining order against County Department of Corrections officials under 42 U.S.C. §1983 permitting him to seek bail, is neither controlling nor applicable. 2017 WL 3476777, *1 (E.D. Wash. July 31, 2017). In *Ochoa*, the plaintiff was an admitted Mexican citizen, had previously agreed to voluntarily to remove to Mexico after a DUI arrest, and had apparently failed to do so at the time of the arrest for second degree assault and malicious mischief. *Id.* at *1-2. Upon his incarceration, ICE did not issue a detainer, but an *administrative arrest warrant* (the I-200). *Id.* at *2, 11. By contrast, in the present case, Defendant Lindros issued an I-247D detainer for her, provided it to MCSO and *requested* that MCSO serve it on her and maintain custody of her for a period not to exceed 48 hours. Doc 18 at Exhibit J, entitled "Immigration Detainer – Request for Voluntary Action." The I-200 contains no such language and instead *commands* that the person be taken into custody, without specifying a time limit, for the commencement of removal proceedings. *See Ochoa,* Case No. 1:17-CV-03124-SMJ (E.D. Wash.), Doc. No. 7-1. The court also explicitly limited its holding, noting that its order against the County defendants "affects the status of only one individual, Sanchez Ochoa." *Id.* at *15.

Finally, Plaintiff's citation to INS regulations does not support her argument.[5] There simply is no reason for the Court to overturn long-standing precedent that immigration detainers are civil in nature; paragraph 83(a)-(c) of Plaintiff's Amended Complaint should be dismissed with prejudice. *See Duncan Roy, et al., v. County of Los Angeles, et al*., 2017 WL

---

[5] These regulations are codified in the Code of Federal Regulations and authorize the use of immigration detainers such as the one in this case. *See, e.g*., 8 C.F.R. §287.7.

2559619, *10 (C.D. Calif. June 12, 2017)(reviewing precedent and rejecting application of Fourth Amendment criminal procedural requirements to ICE officers' probable cause determinations).

### C. Officer Lindros is Not Liable for Damages for Plaintiff's Detention Prior to Her Entry into ICE Custody.

It is undisputed that Plaintiff was never served with the detainer. Doc. 15 at ¶53. Plaintiff admits that the detainer therefore did not take effect. *Id.* Thus, Plaintiff's continued detention at the 4th Avenue jail was at the behest of MCSO, not Defendant. The only authority on which Plaintiff relies to hold Officer Lindros for the actions of MCSO is *Mendia*, 165 F. Supp. at 889. (Doc. 50 at p. 13). *Mendia* is not controlling and is distinguishable because it concerned Plaintiff's attempt to obtain bail from third-parties during a long incarceration, not a request to local law enforcement for a temporary hold limited to 48 hours. *Id.* at *870. The Ninth Circuit cases of *Campos*, 62 F.3d at 314 and *Camarena*, 107 F. Appx. at 822, holding that detainers are merely requests to local law enforcement that do not place a person in federal custody, are controlling, and Officer Lindros therefore is not liable for any damages prior to the time Plaintiff was removed from the 4th Avenue jail.

### D. Officer Lindros Has Qualified Immunity.

Plaintiff fails to respond to Officer Lindros' arguments that the Court should dismiss Plaintiff's allegations in paragraphs 83(a), (b) and (c) because, on March 19, 2016, there were no cases holding that (1) civil immigration detainers must be accompanied by warrants supported by a detailed, supportive declarations that (2) they be issued by neutral magistrates, or that (3) detainees be given probable cause hearings within 48 hours of the request to detain them. Doc. 50 at pp. 13-17. Indeed, the only cases on which Plaintiff relies in her response are non-controlling[6], and some even post-date Officer Lindros' actions. Doc. 50 at pp. 9-13.

---

[6] One of the cases to which Plaintiff cites elsewhere, *Morales v. Chadborne*,, 996 F. Supp.2d 19, 34 (D. R.I. 2014) (Doc. 50 at p. 19) reviewed the applicable law and regulations and concluded that there is no right to notice and an opportunity to be heard before the issuance of a detainer and that 8 C.F.R. §287.7(d) provided that a person could be held for up to 48 hours based on a detainer without imputing any requirement for a probable cause hearing within that time.

- 6 -

Plaintiff cannot carry her burden that the law was clearly established at the time of the underlying actions. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011).   Nor can Plaintiff establish that it would have been clear to every reasonable detention officer that using the I-247D form pursuant to INA regulations and failing to provide Plaintiff with a *Gerstein* hearing would violate a civil immigration detainee's rights. *See id.*  Thus, Officer Lindros is entitled to qualified immunity, and the Court should dismiss paragraphs 83(a), (b) and (c), and (e) of Plaintiff's Amended Complaint with prejudice.

In paragraph 83(d), Plaintiff relies heavily on the recent  district court cases of *Mendia* (N.D. Calif. 2016), *Morales* (D. R.I. 2015) and *Lyttle* (M.D. Ga. 2012) for the proposition that "it was clearly established that an ICE officer does not have the authority to detain or deport U.S. citizens."  Doc. 50 at pp. 14-15.  This is too broad a reading of these cases, which are limited to their specific facts and involved self-declared U.S. citizens.  They are insufficient to satisfy Plaintiff's burden that the right at issue was sufficiently clear that every reasonable official would have understood that issuing a detainer based on Plaintiff's foreign birthplace and refusal to answer questions about her citizenship would give rise to a Fourth Amendment violation. *See INS v. Lopez-Mendoza,* 468 U.S. 1032 at 1043-44 (1984) (citing *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-54 (1923)(adverse inference may be drawn from silence).  Thus, even if his act could be viewed as mistaken in hindsight, he is entitled to qualified immunity based on arguable probable cause, and Count V of Plaintiff's Amended Complaint should be dismissed with prejudice. *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1249 (2012).

**II.     Plaintiff Has Failed to State a Claim for an Equal Protection Violation, and Officer Lindros Has Qualified Immunity.**

Plaintiff does not dispute that the allegation that Officer Lindros' only comment about her – that she was a "pain in the ass illegal" (Doc. 15 at ¶45) – references neither national origin nor ethnicity. (Doc. 50 at pp. 17-18). Plaintiff's only possible basis for an equal protection claim is that she was treated differently from two other protesters, who she does not allege were interviewed by *Officer Lindros*, as opposed to another, unidentified ICE agent.

Doc. 15 at ¶40.  She cannot state an equal protection claim against Officer Lindros based on another agent's conduct.  *See Iqbal,* 556 U.S. 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct.")  Indeed, since Plaintiff does not allege that Officer Lindros treated her differently than anyone else or that he considered her Hispanic ethnicity when he issued the detainer (Doc. 15 at ¶¶85-88), she has failed to state a claim as a matter of law.

Furthermore, Officer Lindros is entitled to qualified immunity for any equal protection violation.  The only cases on which Plaintiff relies to defeat qualified immunity[7] are *Mendia*, 165 F. Supp.3d at 889, a Northern District of California decision issued less than one month before Officer Lindros issued the detainer, and *Morales v. Chadborne*, 996 F. Supp. 2d at 35, a 2014 District of Rhode Island opinion.  (Doc. 50 at p. 19).  Plaintiff does not address Defendant's argument that there is no clearly established law that birthplace cannot be used to establish probable cause for an immigration detainer, but instead attempts to reframe the issue that all defendants should avoid discriminating based on national origin.  Doc. 50 at p. 19.  Again, this is a misunderstanding of qualified immunity as Plaintiff has the burden of showing that the right was clearly established.

Plaintiff bears the burden of showing that the right at issue was clearly established. *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011).  "To be clearly established, a right must be sufficiently clear that *every reasonable official* would have understood that what he is doing violates that right."  *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015) (emphasis added) (quoting *Reichle v. Howards*, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012)).  Although a plaintiff need not find "a case directly on point, . . . existing precedent must have placed the . . . constitutional question beyond debate."  *al–Kidd*, 131 S.Ct. at 2083.  That is, existing precedent must have "placed beyond debate the unconstitutionality of" the officials' actions, as those actions unfolded in the *specific context of the case at hand*.  *Taylor*, 135 S.Ct. at 2044 (emphasis added).  Hence, a plaintiff must prove that "precedent on the books" at the time the

---

[7] *United States v. Bautista*, 684 F.2d 1286 (9th Cir. 1982), also cited by Plaintiff (Doc. 50 at p. 19, n. 7), concerned a *Terry* stop, not an equal protection claim.

- 8 -

official acted "would have made clear to [them] that [their actions] violated the Constitution." *Id.* at 2045.

General propositions that discrimination is bad or sporadic district court opinions from other jurisdictions do not rise to the level of clearly established law.  Plaintiff cannot cite to any Supreme Court or Court of Appeals' case on point.  Indeed, Plaintiff concedes that, in immigration removal proceedings, evidence of foreign birth gives rise to a rebuttable presumption of alienage (Doc. 50 at p. 20) and admits that she refused to answer questions about her citizenship.  Doc. 15 at ¶44.Count VI of Plaintiff's Amended Complaint should therefore be dismissed with prejudice because Plaintiff has failed to show that (1) the right to of an individual arrestee to have an interviewing ICE officer not consider her foreign birthplace and refusal to answer questions was clearly established on March 19, 2016, and (2) that every reasonable officer would have understood he would be violating her right in so doing.

### III.     Plaintiff Has Failed to State a Claim for a Substantive or Procedural Due Process Violation, and Officer Lindros Has Qualified Immunity.

Plaintiff relies on two district court cases to dispute the established principle that the Fourth Amendment governs Plaintiff's detention claim: *Villars v. Kubiatowski*, 45 F. Supp.3d 791 (N.D. Ill. 2014) and *Ortega v. ICE*, 737 F.3d 435 (6th Cir. 2013).  Doc. 50 at p. 21.  In *Villars*, the *pro-se* plaintiff was held on a detainer and a federal material witness warrant. 45 F. Supp. at 796-798.  He brought a 25-Count complaint against approximately 60 defendants, including federal prosecutors and law enforcement officers.  *Villars,* 1:12CV4586 (N.D. Ill.) at Doc. 5.  Allegations included a Fourth Amendment count based in part on allegations of failure to supervise and unlawful strip searches, and a substantive due process claim based on state-created danger. *See id*.  The court liberally construed this *pro-se* complaint, yet struck four of seven counts against the local defendant.  45 F. Supp.3d at 802. Yet, nowhere did the *Ortega* court conclude that it was overturning *Albright v. Oliver*, or *Graham v. Connor*, which hold that the Fourth Amendment is the exclusive remedy for a pretrial detention claim.  *Oretga* discussed whether home confinement could give rise to a liberty interest, but held that officers were shielded from liability by virtue of qualified immunity.  737 F.3d at 440-441.  Thus,

*Albright* and *Graham* are controlling, and the Court should dismiss this Plaintiff's duplicative substantive due process claim in Count VII with prejudice.

The Court should also dismiss Plaintiff's procedural due process claim based on inadequate pleading. Because detainers are mere requests to local law enforcement[8], (2) do not place prisoners in ICE custody[9], and (3) are limited to a maximum of 48 hours[10] – there is no right to notice or a hearing prior to their issuance or enforcement. *Oretga*, 737 F.3d at 438. Plaintiff relies on a case concerning commitment to a state mental health facility, which is distinguishable as it involved violation of state procedural safeguards for voluntary patient admissions, not immigration detention. *See* Doc. 50 at p. 22, citing *Zinermon v. Burch*, 494 U.S. 113 (1990). The only other case on which Plaintiff relies, *Uroza v. Salt Lake City* (Doc. 50 at p. 21), is not controlling and mistakenly relies on case law concerning deportation proceedings, which occur in immigration court. 2014 WL 4457300 at *3 (D. Utah Sept. 20, 2014)("'It is well established that the Fifth Amendment entitles aliens to due process of law in *deportation* proceedings'")(emphasis added). This is consistent with 8 C.F.R. §1534 (setting forth the procedural safeguards for removal hearings), but has no bearing on the issuance of temporary detainers pursuant to 8 C.F.R. §287.7.

Plaintiff also fails to address Officer Lindros' argument that he is entitled to qualified immunity for a procedural due process violation. *See* Doc. 50 at 21-22. Officer Lindros was not required by federal statute or regulation to provide a pre-detainer notice or hearing; thus, such rights were not clearly established when he issued a detainer on March 19, 2016. *See*, *e.g., Morales v. Chadbourne*, 996 F. Supp.2d at 34, *aff'd on other grounds*, 793 F.3d 208 (1st Cir. 2015). A reasonable officer would not have understood that not affording Plaintiff notice or a hearing before issuing a detainer would violate her procedural due process rights. Therefore, Officer Lindros is entitled to qualified immunity on Count VII.

---

[8] *Galarza v. Szalczyk*, 745 F.3d at 643; *Campos*, 62 F.3d at 314.
[9] *Id.*; *Camarena v. Slade*, 107 F.Appx. 821, 822 (9th Cir. 2004); 8 C.F.R. §287.7.
[10] 8 C.F.R. §287.7(d).

- 10 -

**IV.     The Court Should Dismiss Plaintiff's First Amendment Claim.**

      **A.     There is No Supreme Court Case Recognizing a First Amendment Retaliation Claim under *Bivens*.**

The Court should decline to recognize a First Amendment retaliation *Bivens* cause of action against Officer Lindros.  Plaintiff admits that the Supreme Court has not extended *Bivens* to First Amendment claims.  Doc. 50 at 22. Insofar as the Court has considered claims of retaliation under any amendment, those have been squarely rejected. *See Wilkie v. Robbins*, 551 U.S. 537, 549 (2007); *Bush v. Lucas*, 462 U.S. 367 (1983).

Plaintiff relies on cases outside the Supreme Court, *e.g., Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986).  Doc. 50 at p. 22.  Under *Abbasi*, a Court of Appeals decision cannot extend *Bivens*. 137 S.Ct. at 1859; *contra id.* at *1878.  Moreover, *Gibson* involved cursory analysis in a different context, where FBI agents were alleged to have "penalize[d] and discourage[d] . . .controversial political activities through an unremitting campaign of terror and harassment." 781 F.2d at 1337.  Plaintiff's silence, by contrast, is far afield from the political speech in *Gibson*.

Plaintiff cannot circumvent *Abbassi*'s requirement that "even a modest extension [of *Bivens*] is still an extension" and that "[t]he proper test for determining whether a case presents a new *Bivens* context is" whether "the case is different in a meaningful way from previous *Bivens* cases decided by this [the United States Supreme] Court." 137 S. Ct. at *1864, 1859. Thus, it is entirely proper for the Court to consider Plaintiff's First Amendment retaliation claim in the context of the specific facts of this case involving the issuance of an immigration detainer based on Plaintiff's foreign birthplace and refusal to answer questions about her citizenship.  Doc. 15 at 43-44.  Plaintiff can point to no case that she is entitled to a Sixth Amendment right of criminal defendants to counsel or a Fifth Amendment right against self-incrimination against testifying in a criminal case during an interview with a deportation officer.  Doc. 50 at p. 23.  Under *Abbasi*, Plaintiff's purported First Amendment retaliation claim must include Plaintiff's refusal to answer Officer Lindros' appropriate immigration-related questions.

Plaintiff cannot dispute that the facts of this case are far more similar to *Turner*, 2013 WL 5877358, *6, where the plaintiff repeatedly avoided opportunities to disclose her U.S. citizenship, than those of *Lyttle,* 887 F. Supp.2d at 1266, or *Mendia,* 2016 WL 265432 at *1*, where the plaintiffs claimed that the officers were informed and actually *knew* that the plaintiffs were U.S. citizens. Moreover, the courts in both *Lyttle* and *Mendia* limited their holdings to the specific facts of those cases. *Lyttle*, 887 F. Supp.2d at 2370 (discussed *supra* in §I.A, p. 3) and *Mendia*, 2016 WL 2654327 at *15. Thus, Plaintiff's attempts to minimize the legitimate concerns set forth in *Turner,* as discussed in detail *supra* in §I.A, pp. 3-4, are disingenuous. *See also Abbasi,* 137 S.Ct. at 1858 ("the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide); *Anderson v. Creighton*, 483 U.S. 625, 628 (1987)("[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.") Indeed, given Plaintiff's minimal and entirely avoidable damages in this case, Plaintiff's *Bivens* suit is properly seen as an improper vehicle to challenge to the "proper exercise of [C]ongressional power" (Doc. 50 at p. 24) and agency policy. *FDIC v. Meyer*, 510 U.S. at 486; *Correctional Servs. Corp.,* 534 U.S. 74. Consequently, special factors counsel hesitation in extending *Bivens* to allow this Plaintiff's First Amendment retaliation claim.

### B. Plaintiff Fails to State a Claim for First Amendment Retaliation.

Plaintiff conflates the actions of Officer Lindros with those of MCSO as the cause of the alleged adverse action. Doc. 50 at p. 24. However, Plaintiff does not allege that Officer Lindros initially arrested her and transported her to the 4th Avenue Jail, but only that he issued a detainer against her. Doc. 15 at ¶¶37-38, 45; Doc. 18 at Exhibit J, entitled "Immigration Detainer – Request for Voluntary Action." As discussed extensively, supra, at §1.B, p. 4, the detainer could not serve as an adverse action as it was merely a request to local law enforcement.

Second, as explained, *supra* at §4A, p. 11-12, Plaintiff cannot predicate a First Amendment retaliation claim based on "deciding what not to say" or "exercising a right not to

speak" during an interview with a deportation officer as alleged in Doc. 50 at p. 24.  The case on which Plaintiff relies concerns very different facts, *e.g.,* state law compelling disclosures by professional fundraisers and regulations on their fees.  Doc. 50 at p. 24 citing *Riley v. Nat'ls Fed'n of the Blind of N. Carolina*, 487 U.S. 781 (1988).  *Rile*y does not state that "deciding what not to say" or "exercising a right not to speak" can be the basis of a First Amendment retaliation claim.[11]  *See id.*

Although Plaintiff cites *Ford v. City of Yakima*, (Doc. 50 at p. 24), in that case, the plaintiff yelled at a police officer and told him that his traffic stop was "racially motived." 706 F.3d 1888, 1190 (9th Cir. 2013).  By contrast, Plaintiff has not identified any verbal speech for which Officer Lindros retaliated against her.  *See* Doc. 15; *see also* Doc. 50 at p. 24.  Plaintiff cannot allege that she engaged in protected conduct for purposes of a First Amendment retaliation claim.

Moreover, Plaintiff makes no response to Defendant's argument that her speech was not chilled because she spoke to a reporter and was featured in a news article shortly after her release.  Doc. 18, Exhibit F.

Finally, Plaintiff asserts, citing *Lyttle*, that "Defendant does not have a legitimate law enforcement goal of detaining U.S. citizens and placing them in removal proceedings." Doc. 50 at p. 24.  This is a misrepresentation of the limited holding in *Lyttle,* 887 F. Supp.2d at 2370, and of Officer Lindros' duties to carry out federal immigration law, which requires the investigation of all persons referred to him by MCSO.  Consequently, the Court should dismiss Plaintiff's First Amendment retaliation claim with prejudice.

**C.     Officer Lindros is Shielded by Qualified Immunity.**

Plaintiff's citations in response to Officer Lindros' qualified immunity argument (Doc. 50 at p. 25) are simply inapplicable.  *Morales*, and *Taravochia* concern Fourth Amendment, not First Amendment, claims.  *Wooley v. Maynard* did not address First Amendment retaliation

---

[11] Although not cited by Plaintiff here, in *Mendia* the plaintiff told officers of his U.S. citizenship. 2016 *WL* 265432 at *8.

at all, but the motto on New Hampshire license plates. 430 U.W. 705, 707 (1977). *Pratt v. Rowland* did not concern the right to remain silent, but alleged retaliation against a prisoner for protected speech in the form of an interview with a local Fox television affiliate. 65 F.3d 802, 803 (9th Cir. 1995). *Jackler v. Byrne* concerned a Section 1983 First Amendment retaliation claim involving a public employee's refusal to retract his report and make a false statement in violation of New York law. 658 F.3d 231, 239 (2d Cir. 2011). The present case differs from the authorities cited: Plaintiff made no statement at all concerning her citizenship and purported to invoke a Fifth Amendment testimonial right against self-incrimination against answering questions concerning a civil immigration matter. Doc. 15 at 44.

Finally, Plaintiff cites to *Bridges v. Hubbard* (Doc. 50 at p. 25), a non-controlling, unpublished district court case, which concerned a prison disciplinary charge for conspiracy to murder. Given the disciplinary charge, the court's analysis is properly viewed in light of the Fifth Amendment right against self-incrimination in a subsequent criminal proceeding, even if administrative. *Id.* at *9. Consequently, based on these scattered, highly distinguishable cases, Plaintiff cannot meet her burden that it was clearly established that the Plaintiff had a right not to speak with Officer Lindros in a *civil* immigration investigation.

Nor can Plaintiff establish that every reasonable immigration officer would have understood that Plaintiff was invoking a First Amendment right against compelled speech, as opposed to an underlying, unrecognized Fifth Amendment right against self-incrimination, as Plaintiff stated. Doc. 15 at ¶44. It is far more likely that reasonable officers would have been cognizant that there is no clearly established First Amendment right not to answer an officer's question. *See* Doc. 38 at p. 17 (citing *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017)(reviewing cases) and *Koch v. City of Del City*, 660 F.3d 1228, 1244 (10th Cir. 2011)). Therefore, the Court should dismiss Plaintiff's Count VIII of Plaintiff's Amended Complaint for First Amendment retaliation with prejudice.

1    RESPECTFULLY SUBMITTED this 29th day of September, 2017.

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

*Elizabeth K. Sichi*
Elizabeth K. Sichi
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Ray A. Ybarra Maldonado
LAW OFFICE OF RAY A. YBARRA MALDONADO, PLC
2702 East Thomas Road, Suite A
Phoenix, Arizona 85016

Mark Fleming
National Immigrant Justice Center
208 South LaSalle Street, Suite 1300
Chicago, Illinois 60604

Matthew J. Piers
Jose J. Behar
Chirag G. Badlani
HUGHES SOCOL PIERS RESNICK & DYM LTD
70 West Madison Street, Suite 4000
Chicago, Illinois 60657

R. Andrew Free
LAW OFFICES OF R. ANDREW FREE
P. O. Box 90568
Nashville, TN 37209
*Attorneys for Plaintiffs*

*s/Louella M. Short*
United States Attorney's Office